## MACHIAS RIVER COMPANY *versus* POPE *&* als.

County Commissioners, designated *eo nomine* to audit bills of expenditure in the improvements of a river to facilitate the driving of lumber, act, when auditing such bills, not as a judicial court, but as individuals; and no entry of their doings need be made upon the records of the County Commissioners, although the rate of toll for the use of the improvements be made to depend upon the amount of the expenditure, as ascertained by such audit.

ON EXCEPTIONS from the *District Court,* HATHAWAY, J.

ASSUMPSIT.

The plaintiffs, as a corporation, were authorized to erect dams, sluice-ways and other improvements in the Machias river, to facilitate the driving of lumber, upon which they were to have right to a toll. The rate of the toll was to be proportionate to the sums expended in making the improvements. For the purpose of ascertaining the amount of such expenditures, the charter, § 11, required that the accounts should "be audited" by the County Commissioners. There was an amendatory Act of 1846, which is sufficiently recited in the opinion of the Court.

Under their charter, the plaintiffs erected works and improvements on the river, through which the defendants drove their logs, and this suit is brought to recover tolls for the same.

The plaintiffs read in evidence an instrument, dated Jan. 8th, 1842, signed by "Ichabod Bucknam and Joseph Adams, County Commissioners," certifying *that* they had examined

the accounts of the expenditures made by the company during the year 1841; *that* they had found the accounts to be properly vouched and correctly cast, and *that* they amounted to $6848,83.

The certificate did not purport that the examination of the accounts was had at any term or court of the County Commissioners, nor was any entry concerning the same ever made in the records of that court. The defendants objected to the introduction of the certificate, because it did not purport to show any action by the County Commissioners, as a judicial tribunal, and was never recorded. There was other evidence in the case.

The Judge ordered a nonsuit, to which the plaintiffs excepted.

*Thatcher*, for the plaintiffs.

*Walker* and *O'Brien*, for the defendants.

If the provision in the 11th section of the Act of incorporation be a condition precedent to the plaintiffs' right to recover, the condition must be complied with, and the duty performed before this action can be maintained. Whether the duty be a condition precedent or one merely directory, in the management of the affairs of the corporation, depends upon the nature and object of the provision in the charter. *Middle Bridge* v. *Brooks*, 13 Maine, 391; *Wales* v. *Stetson*, 2 Mass. 146; *Bank United States* v. *Dandridge*, 12 Wheat. 64.

Corporations stand on the same footing with natural persons, open to the same implications, and receiving the benefit of the same presumptions.

The public have an interest in the audit and record of the bills, showing the expenditures. The record was to inform people what was legally required of them, and thus to protect them from fraud. The auditings were for the benefit of the public, as well as the corporation. The nature of the provision, and the public convenience, require them to be of record. The Legislature must have intended that the adjudications should be of record, by restricting the ultimate rem-

edy, (in case of an overcharge of toll upon works gone to decay,) to an appeal to the County Commissioners.

RICE, J. — This is assumpsit for toll on logs which the defendants run over certain dams and improvements made by the plaintiffs on the Machias River. The company was incorporated March 4th, 1840, and in 1846, July 30, an Act was passed additional to the original Act of incorporation.

The second section, of the original Act of incorporation, provides for levying a toll. The third section gives the company a lien on all logs that pass their works, as security for tolls, or the right to bring an action of assumpsit to collect the same.

Section eleven provides " that for the purpose of ascertaining the cost of the improvements contemplated in this Act, and ascertaining the amount of tolls chargeable, according to the second section hereof, the amounts showing said expenses shall be audited by the County Commissioners, for the county of Washington ; and no accounts shall be allowed for repairs."

Certain original papers, purporting to be adjudications and certificates of the County Commissioners of Washington county, auditing plaintiffs' accounts of improvements, were offered at the trial, and objected to by defendants, as not being matter of record, but were admitted by the Court.

The only point in defence insisted on at the argument was, that the plaintiffs' accounts for improvements should have been audited by the County Commissioners, acting as a court of record, and that the whole proceedings should have been recorded by them, for the information of the public. The auditing and recording by the Commissioners, it was contended, were conditions precedent to be performed by the company before any right to demand or receive toll accrued to them.

It was not controverted that Ichabod Bucknam and Joseph Adams were County Commissioners for the County of Washington in 1842, nor that in January of that year, those men did audit the accounts, with the vouchers of the company for expenditures made in improving the Machias river, under the

provisions of the Act of 1840, and certified the amount of those expenditures; nor was it claimed by the plaintiffs that those accounts or the proceedings of the Commissioners in auditing them, had been recorded with the records of the County Commissioners.

Does the Act of incorporation require that these proceedings should be made matter of record? It certainly does not so· require in terms. It would seem to have been the intention of the Legislature to restrict the corporators in the imposition of tolls to a rate proportionate to the amount actually expended upon their improvements. And as a measure of public security the Act provides that the cost of these improvements shall be examined and certified by the County Commissioners.

In this proceeding there were no adversary parties. The auditing was not to settle a matter of litigation, but was rather in the nature of a special commission provided by law, to examine the accounts of the plaintiffs, connected with their improvements, and certify the same as a basis upon which the company would be authorized to found its claims for tolls. To audit, is to examine an account, compare it with the vouchers, adjust the same, and to state the balance, by persons legally authorized for the purpose. It is not a judicial act.

The intention of the Legislature may reasonably be presumed to have been to designate persons to perform *this duty*, whose character and position in society was such as to entitle them to public confidence. The acts required do not fall within the legitimate scope of official duty prescribed by law to the courts of County Commissioners, and cannot by implication be deemed a part of their official duty. Had the Act required those accounts to be audited by the Judges of the Supreme Court, or a Judge of Probate, it would, we apprehend, hardly be contended, that it thereby would become the duty of those courts to enter upon their records a transcript of those accounts and the adjudications thereon.

This view of the case receives support, by a reference to the additional Act of 1846, in which provision is made for application to the County Commissioners in certain contingen-

cies, and by which they are specially empowered to act judicially, to issue notices, and to hear parties with their witnesses, and finally to adjudicate between them and award cost to the prevailing party.

From these considerations we are of the opinion that the auditing prescribed in the eleventh section of the original Act of incorporation was not intended by the Legislature to fall within the sphere of duty imposed upon County Commissioners, as such, but rather upon the men as individuals, who should, for the time being, hold those offices. Their proceedings, therefore, while acting in the capacity of auditors, were not matter of public record, the statute not having so provided.

*Exceptions sustained and a new trial granted.*

SHEPLEY, C. J., WELLS and APPLETON, J. J., concurred.