[Civil No. 1500. Filed December 22, 1915.]

[153 Pac. 773.]

## J. C. CALLAGHAN, Auditor of the State of Arizona, Appellant, v. JESSE L. BOYCE, Appellee.

1. APPEAL AND ERROR—REVIEW—WAIVER OF ERRORS.—Where appellant expressly waived his claim of appeal as to certain causes of action, they will not be considered.

2. STATES—AUDITORS—STATUTES.—Civil Code of 1913, paragraph 78, declaring that no warrant shall be drawn by the auditor or paid by the treasurer unless the money has been previously appropriated, nor shall the whole amount drawn for or paid under one head ever exceed the amount appropriated by law for that purpose, and all funds other than the general fund shall be considered as appropriated as

XVII Ariz.—28

authorized by law, has no application to the act of auditing a claim but refers to the drawing of a warrant in payment of a claim already audited.

3. STATES—AUDITORS—DUTIES OF.—Where claims for salary, for traveling expenses, and disbursements of agents and officers of the several departments of government were by general statutes required to be audited by special boards, or payment was fixed by general appropriation statutes they fall within the exception of Civil Code of 1913, paragraph 70, declaring that the auditor shall audit and settle all claims against the state, except only such as may be expressly required by law to be audited and settled by other officer or person, and hence the auditor has no discretion to reject such claims and refuse to draw appropriate warrants; for, as to claims recognized by law as proper claims against the state, the power of the auditor only extends to verification, and he has no discretion as to their merit.

4. STATES—AUDITORS—DUTIES OF.—Under Civil Code of 1913, paragraph 78, declaring that no warrant shall be drawn by the auditor or paid by the treasurer unless the money has been previously appropriated by law, and paragraph 79, providing that in all cases where the law recognizes a claim for money against the state, but no appropriation shall have been made by law to pay the same, the auditor shall audit and adjust the same and give the claimant a certificate of the amount thereof, the auditor must, as to claims fixed by other officers or authorized by general appropriation bills, either draw proper warrants, or, in case the appropriation be exhausted, issue the certificates provided for.

5. STATES—AUDITORS—APPROPRIATIONS.—Under Civil Code of 1913, paragraph 78, declaring that no warrant shall be drawn by the auditor unless the money has been previously appropriated by law, the auditor cannot refuse to draw warrants to satisfy claims which the general law declares shall be payable out of the general or other designated fund on the ground that such statutes are not legal appropriations.

6. CONSTITUTIONAL LAW—PROVINCE OF JUDICIARY.—A contention that an annual continuing appropriation of public revenue is dangerous and tends to open the doors to extravagance is addressed to the policy of the law, and cannot be considered by the court on the claim that such appropriation is unconstitutional.

7. STATES—APPROPRIATION.—In view of Constitution, article 22, continuing in force territorial laws not repugnant to the Constitution, and the assumption of all persons that such provision continued in force earlier laws making annual continuing appropriations, the legislature, which has power over the disposition of public revenue, may, the Constitution not prohibiting, validly enact statutes making annual continuing appropriations.

8. MANDAMUS—WRIT—PLEADING.—In *mandamus* to compel the auditor to issue warrants for claims, the contention that no funds existed in certain appropriations, and so the warrants should not be issued, but a certificate should be issued, not having been pleaded, cannot be raised.

[As to right of ministerial officer to question validity of statute, see note in **Ann. Cas. 1912D, 152.**]

9. STATUTES—TITLE AND SUBJECT—APPROPRIATIONS—POWER OF LEGISLATURE.—Under Constitution, article 4, part 2, section 20, declaring the legislature may make general appropriations for the various departments, etc., the legislature has the same power to act that all prior legislatures possessed, but matters included in an appropriation bill which are not embraced within the subjects therein specified and properly connected therewith are void under Constitution, article 4, part 2, section 13, on the ground that they are not expressed in the title of the bill, though in a general appropriation bill the legislature may repeal previous laws making similar annual continuing appropriations.

10. STATUTES — VETO — APPROPRIATIONS — "ITEM."—Under Constitution article 5, section 7, providing for presentation of bills to the Governor, and that, if he approve, he shall sign them, and, if not, shall veto them and that, if any bill presented contains several items of appropriations, he may veto one or more of such items while approving other portions of the bill, in which case he shall append to the bill a statement of the item or items which he declines to approve, the term "item" means the particulars, the details, or the distinct and severable parts of the bill; consequently the Governor's veto of appropriations for various departments contained in the general appropriation bill is a veto of separate items, and carries with it provisions in such bills for the repeal of previous appropriations.

11. STATUTES—GOVERNOR—VETO.—Under Constitution, article 5, section 7, authorizing the Governor to veto separate items of an appropriation bill, his veto of that portion of an item of an appropriation bill which sought to repeal another statute, but left the appropriation, is unavailing; the two being inseparable.

12. STATUTES—VALIDITY—SUBJECT OF ACT.—Under Constitution, article 4, part 2, section 13, declaring that every act shall embrace but one subject and matters properly connected therewith, the legislature cannot, in an item in an appropriation bill providing for payment of the salary of the citizen member of the board of control, repeal appropriations affecting the salary of a chauffeur for the board of state control.

13. STATES—APPROPRIATIONS—PAYMENT.—Where an item of the general appropriation bill providing for aid to high schools appropri-

ated $73,000, $36,500, or so much thereof as might be needed to be expended during the years ending June, 1916 and 1917, and the bill became effective June 9, 1915, claims for expenses accruing for the year 1913 and 1914 may be paid out of the appropriation.

14. MANDAMUS—DEFENSES—PLEADING.—In a proceeding for *mandamus* to compel the auditor to issue a warrant, where the payment of the claim was authorized by general appropriation act, the defense that there was no money in the fund created must be pleaded to be available.

15. STATES—APPROPRIATIONS—PAYMENT.—Claims for which definite, fixed, and specific appropriations have been made, and which are payable out of a general fund, are the first charges out of such general fund, while other appropriations payable out of the general fund which are not specific in amount shall be paid out of any moneys remaining in the fund not specifically appropriated.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Modified and affirmed.

Mr. G. P. Bullard and Mr. Will E. Ryan, for Appellant.

Mr. George J. Stoneman, for Appellee.

CUNNINGHAM, J.—This proceeding was commenced on July 23, 1915, by the appellee filing in the superior court of Maricopa county his application praying that an alternative writ of *mandamus* be issued directed to the state auditor, as defendant, requiring him to show cause, if any he has, why the defendant, as the auditor of the state of Arizona, does not audit, allow and draw a warrant upon the proper funds of the state of Arizona for the payment of each and every of the demands set forth in the petition.

The petition sets forth 20 separate demands numbering them, beginning with (a) and continuing to and including (t). The demands are briefly described as follows:

(a) A claim by Anna May Daly on account of salary as clerk of the incorporating department of the Arizona Corporation Commission for the first half of July, 1915, $45.

(b) A claim of Pauline M. Gass on account of salary due for stenographic services rendered for the state tax commission covering July 9 and 10, 1915, at $3 per day, $6.

(c) A claim by G. M. Willard, state game warden of the state of Arizona, on account of traveling expenses incurred from July 1 to 6, 1915, inclusive, $18.50.

(d) A claim by May Belle Craig, office deputy of the state game warden, for the first half of the month of July, 1915, $50.

(e) A claim by Charles R. Osborn for salary as secretary of the state board of control for the first half of the month of July, 1915, $100.

(f) A claim by Harry Shea for services as chauffeur for the first half of July, 1915, as necessary traveling expenses of the board of control, $62.50.

(g) A claim by Lamar Cobb on account of salary as state engineer for the first half of the month of July, 1915, $125.

(h) A claim by May S. Allen, secretary of the sheep sanitary commission, for salary for the first half of July, 1915, $37.50.

(i) A claim by B. F. McFall, clerk of the Phoenix union high school upon a certificate of the state board of education of satisfactory evidence and credentials showing that said school has been maintained in a satisfactory manner, for a period of not less than eight months during the school year 1913–14, and has during that period expended $2,500 in teaching vocational pursuits, to be paid out of the general fund under the provisions of chapter 13, sections 2791 to 2796, inclusive, and paragraph 2815 of the Revised Statutes of Arizona (Civil Code 1913), $2,500.

(j) A claim by Charles W. Harris, adjutant-general of the state of Arizona, on account of expenses incurred in the purchase of postage stamps, $10.

(k) A claim by C. W. Adkinson, financial secretary of the University of Arizona, on account of money advanced to the department of the education of the deaf, dumb and blind of the state of Arizona, under the direction of the board of education, which claim was approved by the state board of education, $2.

(l) A claim by the Arizona state fair commission against the maintenance fund, which was approved by the state fair commission and its officers before presentation, $350.

(m) A claim by the Arizona state fair commission on account of state fair deficit, $3,108.74.

(n) A claim by H. C. Crozier & Co. on account of books and supplies furnished to the engineering department of the office of the state engineer, $31.

(o) A claim by the University of Arizona on account of expenses incurred in conducting the bureau of mines for purchase of postage stamps, $2.

(p) A claim by the H. H. McNeil Co. on account of books furnished to the state board of education, $6.

(q) A claim by R. B. Sims on account of salaries and wages of employees and officers of the state prison from July 1 to July 15, 1915, inclusive, $1,332.60.

(r) A claim by C. O. Case, superintendent of public instruction, on account of 250 application blanks for blind children of school, $6.

(s) A claim by Clara Freestone for clerical assistance to the state librarian for the first half of July, 1915, $50.

(t) A claim by B. J. Bradley for repairs and carpenter work on the Capitol grounds, $3.

For the sake of brevity and clearness we will refer to each of the claims by its letter number.

The petition alleges: ''That on and prior to the 16th day of July, 1915, and before the commencement of this action, certain officers and employees of certain departments of the state of Arizona, having and holding . . . just and legal claims against the state of Arizona, assigned to plaintiff herein for collection each and all of said claims, and that on the 15th day of July, 1915, plaintiff, as the lawful holder and owner by assignment of said claims, presented said claims to defendant, as auditor of the state of Arizona, for audit and allowance and the issuing of warrants therefor; that each of said claims so by plaintiff presented to defendant for audit and allowance was duly verified by the persons making the same, and were and are in all respects in the form required by the laws of the state of Arizona, and were and are claims which of right should be allowed and are properly allowable under the existing laws of the state of Arizona as just and legal claims against the state upon the funds against which said claims and demands were presented. . . . ''

The petition further alleges that the defendant, as said auditor of the state, on the sixteenth day of July, 1915, without right or authority of law, refused to audit or allow said

claims, or to authorize the drawing of warrants to cover the amounts therein set forth, for the reason as alleged by the defendant: "That he is in doubt as to the existence of proper legal legislative appropriations and authority for the department of the auditor of the state of Arizona to issue its warrants in payment of any of said claims so by plaintiff presented."

The several claims are therefore set forth by number, as mentioned above, from (a) to (t), both inclusive, and each claim is sufficiently set forth as a separate count or cause of action by reference to preceding allegations, and by additional allegations referring to the particular statute relied upon as authority for the claim and the appropriation as authority for its allowance. The petition is voluminous, and to quote it in full would answer no useful purpose.

The writ to show cause was issued returnable before the court on the second day of August, 1915. Service of the writ was accepted upon the day of its issuance, and on the return day, August 2, 1915, the defendant appeared as commanded, and moved to quash the writ upon alleged grounds, and demurred to the petition generally, and specially to each count or claim, and answered and returned to the merits, alleging:

"That he admits the allegations of said complaint in manner and form as therein alleged; that each and all of the claims (a) to (t), inclusive, were presented to him for audit and for the issuance of a warrant therefor either by him, as auditor of the state of Arizona, or upon the treasurer of the state of Arizona.

"Admits in manner and form as therein alleged that he refused to issue any of said warrants. Denies that such refusals or any of such refusals did constitute, as to any of said claims, a failure to perform an act which the law of the state of Arizona specially enjoined upon him as auditor of the state of Arizona, and so enjoined as a duty resulting from such office to audit such claims and draw warrants therefor to the plaintiff or to the persons originally presenting same to defendant.

"Alleges and says, respecting each and all of said claims, as respecting his refusal to audit and issue warrants for any of same, that he was acting within his official duty designated and vested in him pursuant to the laws of the state of Ari-

zona, and particularly by section 78 and section 79 of the Revised Statutes of Arizona 1913, and by section 23 of House Bill No. 50 of the Third Special Session of the Legislature of the state of Arizona.

"Denies that plaintiff has in and by his complaint alleged and stated any cause entitling plaintiff to relief by this court by writ of *mandamus*, or otherwise, by reason of defendant's acts and doings in the whole premises."

The trial court treated the pleadings of the defendant as an answer which raised only questions of law, and on the return day proceeded to hear the matter as paragraph 1563 of the Civil Code of 1913 permits. The court formally overruled the demurrers, denied the motion to quash, and granted judgment in favor of the plaintiff and against the defendant in accordance with the prayer of the petition, and ordered the alternative writ of *mandamus* to be made absolute. The defendant moved to vacate the judgment, which motion was denied. From the judgment and the order aforesaid the defendant has appealed.

Appellant in his opening brief expressly waives his claim to appeal as to the causes of action numbered, (e), (g), (l), (m) and (n); therefore these causes of action and questions predicated thereon are eliminated from our consideration.

The appellant justifies his refusal to obey the mandate:

(1) Because the duty he is commanded to perform is to audit, allow and authorize the payment of and draw a warrant therefor, upon the treasurer of the state of Arizona, in payment of each, all and every of said claims so by the said Jesse L. Boyce presented, and consequently is commanded to exercise a discretion vested in him as such auditor, in a particular manner; that the act he is commanded to perform is in its nature one requiring the exercise of a discretion, and he is commanded to perform that act in a specified manner, notwithstanding the law giving him the right to exercise his discretion in auditing and in allowing claims presented to him for that purpose.

(2) That at the time the claims were presented there was no authority of law and no funds of the state of Arizona appropriated therefor, making it the duty of the appellant to draw any warrant in payment thereof.

The appellant-defendant in his return nowhere attempts to deny that any of the claims are correct in amount, that they are just, or that they are recognized by law as a claim against the state, but his contention, as made to appear by his return, is that by his refusal to audit and issue warrants in payment of the claims he was acting within his official duty designated and vested in him pursuant to the laws of the state, and particularly by section 78 and section 79 of the Revised Statutes of Arizona 1913, and by section 23 of House Bill No. 50 of the third special session of the legislature of the state of Arizona. Laws 1913, c. 75.

Paragraph 78, *supra,* is as follows: "No warrant shall be drawn by the auditor or paid by the treasurer unless the money has been previously appropriated by law; nor shall the whole amount drawn for or paid under one head ever exceed the amount appropriated by law for that purpose, and all funds other than the general fund shall be considered as appropriated as authorized by law."

Clearly, this statute has no application to the act of auditing a claim. It has reference to drawing a warrant in payment of claims already audited.

Paragraph 79, *supra,* is as follows: "In all cases where the law recognizes a claim for money against the state, but no appropriation shall have been made by law to pay the same, the auditor shall audit and adjust the same, if presented to him, and give the claimant a certificate of the amount thereof, under his official seal, if demanded, and shall report same to the legislature with as little delay as possible."

Paragraph 68 of the Civil Code of 1913 declares the auditor is the general accountant of the state, and as such "he shall have the final auditing of all accounts and make payment of all claims previously passed upon as provided by law."

Paragraph 70, supra: "He shall: (1) Audit and settle all claims against the state, payable out of the treasury, except only such claims as may be expressly required by law to be audited and settled by some other officer or person."

Claim (a) is for the salary of a clerk appointed by the corporation commission under the authority of paragraph 2273 of the Civil Code of 1913. The salary is alleged to have been fixed by the corporation commission at $90 per month, and the claim is made for the salary for the first half of the month

of July, 1915. Paragraph 2296 of the Civil Code of 1913 makes this salary payable from the funds appropriated for the use of the corporation commission after being approved by the commission upon claims therefor to be audited by the board of control. This statute is attacked by the appellant. We will notice that matter below. Paragraph 2273, *supra,* commands the state auditor to draw his warrant upon the general fund of the state for such salary or salaries of clerks appointed by the corporation commission as have been fixed by the commission with the advice of the board of control. Claim (a), then, falls within the exception as one expressly required by law to be audited and settled by some other officer or person.

Claim (b) is alleged to be a claim arising under chapter 1 of title 49, on account of stenographic assistance employed by the tax commission at a compensation fixed by such commission as provided by paragraph 4832, included within such chapter. Paragraph 4835 of said chapter provides that all necessary expenses shall be audited and paid as other state expenses are audited and paid. Thus claim (b) is within the exception above mentioned, and the auditor has no discretion to reject the claim.

Claim (c) is alleged to be a claim arising under the provisions of title 18 of the Penal Code of 1913, as a necessary expense of the game warden. Paragraph 686, included within said title, provides that such expenses shall be paid out of the general fund of the state in the same manner as the salaries of other state officers are paid. Thus claim (c) is within the above-mentioned exception, and the auditor has no discretion to reject the claim.

Claim (d) is alleged to be a claim likewise arising under the provisions of title 18 of the Penal Code of 1913, as the salary of the game warden's office deputy, and is payable as prescribed by paragraph 686 of the Penal Code, and therefore is within the same class as claim (c), *supra,* and thus within the above-mentioned exception. The auditor has no discretion to reject this claim.

Claim (f) is alleged to be an expense incurred by the board of control in the performance of its duties. Paragraph 4455 of the Civil Code of 1913 requires all bills for salaries, clerk and expenses of the board to be paid, and makes it the duty

of the auditor to audit said claims and draw a warrant on the treasury therefor. Paragraph 4458 of the Civil Code of 1913 requires all accounts for clerk hire, salary and disbursements provided for in chapter 1, title 42, including paragraph 4455, to be rendered under oath and audited and allowed by the board, and paid on an order of the auditor drawn on the treasurer. Thus claim (f) falls within said above-mentioned exception.

Claim (h) is alleged to be the salary of the secretary of the sheep sanitary commission for the first half of the month of July, 1915. Paragraph 3787 of the Civil Code of 1913 fixes the salary of this officer at not to exceed $75 per month after the first year. Paragraph 3808 of the Civil Code of 1913 commands the auditor to draw his warrant in payment of claims arising under the provisions of chapter 2, title 30, which includes paragraph 3787, *supra*. Thus claim (h) falls within the above-mentioned exception.

Claim (i) is alleged to be such a claim as is contemplated by chapter 13, title 11, as state aid to the Phoenix union high school, made by its clerk. The state board of education is required to pass upon the claim and certify to the auditor the result it reaches, and to state therein the amount to which such school is entitled as state aid under the provisions of paragraph 2794 of said chapter. Upon receiving such certificate the state auditor is commanded by paragraph 2795 to issue an order to the state treasurer requiring said state treasurer to issue a warrant payable to the treasurer of the county in which such high school is located for the sum so designated by the state board of education in said certificate. Thus claim (i) is within the above-mentioned exception, and the auditor has no discretion in the matter.

Claim (j) is alleged to be a claim arising under paragraph 3900 of the Civil Code of 1913 as an expense necessarily incurred in the performance of the duties of the adjutant general's office. Paragraph 3948 of the Civil Code of 1913 commands "The auditor of the state of Arizona shall draw his warrant on the treasurer, to the order of the proper officer, for all payments and expenditures authorized by this title (title 33), requisitions being made on the auditor for the sums required, which requisitions shall be approved by the adjutant general and the Governor."

Thus claim (j) is within the above-mentioned exception, and the auditor has no discretion in the matter.

Claim (k) is alleged to be a claim arising under chapter 25, title 11, of the Civil Code of 1913. Paragraph 2654 of said chapter provides an appropriation of $5,000 for the purposes mentioned therein, and permits its expenditure under the direction of the state board of education, and commands the treasurer to pay the same on the warrant of the auditor for that purpose. Thus claim (k) is within the above-mentioned exception, and the auditor has no discretion in the matter.

Claim (o) is alleged to be a claim arising under the provisions of chapter 3 of title 42 of the Civil Code of 1913. Paragraph 4505 of said chapter provides that: "The state auditor is hereby authorized and directed to draw his warrant on the state treasurer for all claims approved and allowed by the said board of regents under the provisions of this chapter, and the state treasurer is hereby authorized and directed to pay said warrants out of any moneys in the University fund."

Thus claim (o) is within the above-mentioned exception, and the auditor has no discretion in the matter.

Claim (p) is alleged to be a claim on account of books furnished the state board of education. Such claim arises under subdivision 4 of paragraph 2705, and under such statute the superintendent of public instruction is required to certify to the state auditor the cost of the record book and to whom the same is due; and the said auditor is commanded by said statute to draw his warrant on the state treasurer in favor of the person to whom the same is so certified to be due. Thus claim (p) is within the above-mentioned exception, and the auditor has no discretion in the matter.

Claim (q) is alleged to be a claim on account of salaries and wages of employees and officers of the state prison, arising under the provisions of chapter 1 of title 42. Paragraph 4458, included in said chapter and title, provides that claims for clerk hire, salary and disbursements provided for in that chapter shall be rendered under oath, and audited and allowed by the board and paid on an order of the auditor. Thus claim (q) is within the above-mentioned exception, and the auditor has no discretion in the matter.

Claim (r) is alleged to be a claim on account of application blanks for blind children of school furnished by the superintendent of public instruction and arising under subdivision 4 of paragraph 2705. As stated in reference to claim (p), this claim is likewise within the above-mentioned exception, and the auditor has no discretion in the matter.

Claim (s) is alleged to be a claim for clerical assistance to the state librarian for the first half of July, 1915, under the authority of subdivisions 89 and 90 of section 1, chapter 3, page 20, Session Laws of the First Special Session of the Second State Legislature (Laws 1915), known as the "General Appropriation Bill."

Claim (t) is alleged to be a claim for repairs and carpenter work performed upon the capitol grounds, and arising under chapter 1 of title 42 as a disbursement provided for in said chapter. By the provisions of paragraph 4458 all accounts for such disbursements shall be rendered under oath, and audited and allowed by the board of control and paid on an order of the auditor. Thus claim (t) is within the above-mentioned exception, and the auditor has no discretion in the matter.

The defendant's contention that the performance of the duty commanded by the writ is one which deprives him of the right to exercise a discretion is without merit. All of said claims are such as the law recognizes as proper claims against the state, and the defendant's duty is to examine the claim with reference to the law authorizing it, compare it with the voucher, and draw his warrant or issue his certificate, as the case may be, as the law prescribes. As used in reference to the claims authorized by some statute, the word "audit" means to "verify." If used in reference to an account, it would then have a broader meaning, and imply the exercise of a discretion in rejecting and allowing items of the account; yet in such sense it would not mean a judicial act. *Machias River Co.* v. *Pope*, 35 Me. 19.

To interpret the statute giving the authority to the auditor to audit, the meaning contended for would leave with that important officer the right to nullify all statutes which authorize specific claims against the state and provide a means for their payment. The auditor would be given more power than the executive and legislative branches of the state, and

for any reason sufficient to convince him of the justice of his course, and therefore direct the exercise of his discretion, or, which is the same thing, his judgment, he could reject any claim against the state, whether it be the claim for the salary of a state officer or otherwise, and his judgment would be final. The first reason assigned by the auditor as a justification for his failure to obey the mandate of the writ is insufficient in law for that purpose. The second reason assigned, viz., "That at the time the claims were presented there was no authority of law and no funds of the state of Arizona appropriated therefor making it the duty of the defendant to draw any warrant in payment thereof," is, if maintained, a sufficient justification for the auditor's refusal to obey the mandate to draw his warrant in payment of any claim so presented. Paragraph 78, Civil Code 1913. The reason stated, however, is no justification of his failure to settle the claim and give the claimant a certificate of the amount thereof, under his official seal, if demanded. Paragraph 79, Civil Code 1913.

We have seen above that each claim is recognized by some law as a claim for money against the state. The question of the duty of the auditor, therefore, is whether he must draw a warrant in payment of the several claims, or whether he must give the claimant a certificate of the amount thereof, conceding that such certificate was duly demanded by the claimant. The answer to this question is found by determining whether "the money has been previously appropriated by law." Paragraph 78, *supra*. To determine this question will require an examination of many statutes. This will be accomplished by reference to each separate claim by its letter number, for convenience.

Claim (a) is a claim for the salary of a clerk of the incorporation department of the corporation commission. The salary claimed is that fixed by the corporation commission. Such salary is made payable out of the general fund of the state by paragraph 2273 of the Civil Code of 1913, and is therefore an appropriation of the said fund for the amount of said salary, continuing in its nature. The appellant questions the validity of this appropriation.

Claim (b) is a claim authorized by paragraph 4832, chapter 1, of title 49 of the Civil Code of 1913. Paragraph 4833 of said chapter provides:

"There is hereby annually appropriated, out of the general fund, in the state treasury, a sum sufficient to carry out the provisions of this act."

The appellant questions the validity of this and like statutory appropriations, and his question will hereafter below receive consideration.

Claim (c) is one authorized by title 18 of the Penal Code of 1913, paragraph 686, as a necessary traveling expense of the game warden. The full amount of such expense is limited not to exceed $1,000 per annum. The said expense is made payable out of the general fund of the state. The validity of this appropriation is questioned.

Claim (d) is likewise authorized by title 18 of the Penal Code of 1913, as the salary of the office deputy to the game warden, and is payable out of the same fund and appropriation as claim (c).

Claim (f) is one authorized by chapter 1, title 42 of the Civil Code of 1913, as a necessary traveling expense of the board of control. Paragraph 4460 of the Civil Code of 1913 provides that:

"A sum of money sufficient to carry out the provisions of this chapter [chapter 1, title 42] is hereby annually appropriated out of the general fund."

The validity of this appropriation is questioned by appellant.

Claim (h) is one authorized by paragraph 3787 of the Civil Code of 1913, as the salary of the secretary of the sheep sanitary commission for the first half of July, 1915. Said paragraph 3787 gives the commission power to incur such reasonable expenses as may be necessary in the performance of its duties, provided it may not pay its secretary a salary exceeding $50 per month for the first year, "and thereafter it [such salary] shall not exceed $75 per month. But all of the expenditures of said commission for any and all purposes, shall not exceed the sum of thirty-five hundred dollars in any one year." Subdivision 84 of section 1, chapter 3 of the General Appropriation Bill, appropriates the sum of $4,500 or so much thereof as may be needed for the year 1915-16, "to pay the salary and the expenses of the sheep sanitary commission." This appropriation is questioned by the appellant.

Claim (i) is one authorized by chapter 13, title 11 of the Civil Code of 1913, and paragraph 2794, included in chapter 13, provides that:

"A sum of money sufficient to carry out the provisions of this act is hereby annually appropriated out of the general fund of the state."

The validity of this appropriation is questioned by the appellant.

Claim (j) is one authorized by title 33 of the Civil Code of 1913, under paragraph 3900 of said title. Paragraph 3948 of said title provides:

"The auditor of the state of Arizona shall draw his warrant on the treasurer, to the order of the proper officer, for all payments and expenditures authorized by this title, requisition being made on the auditor for the sums required."

The appellant questions his authority to issue a warrant for payment of this claim.

Claim (k) is one authorized by chapter 25, title 11. Subdivision 99 of section 1, chapter 3 of the General Appropriation Bill, appropriates $29,980 to be expended during the years 1915–16 and 1916–17 for the care and education of defective students in the deaf and dumb department of the University of Arizona. The board of regents is authorized to expend such sum for the purpose of caring for and educating such students. This appropriation is questioned by the appellant.

Claim (o) is one authorized by chapter 3 of title 42 of the Civil Code of 1913, incurred by the University of Arizona on account of conducting the bureau of mines. Section 35 of chapter 3 of the General Appropriation Bill appropriates the sum of $5,000 to be expended during the year ending June 30, 1916, to pay the salaries of the director, assistant employees, for maintenance, etc., of the bureau of mines attached to the University of Arizona, to be expended under the supervision of and by the direction of the board of regents. The appellant questions this appropriation.

Claim (p) is one authorized by subdivision 4 of paragraph 2705 of the Civil Code of 1913. Said statute requires the auditor to draw his warrant, on authority of the certificate of the superintendent of education, on the state treasurer in favor of the person to whom the same is so certified to be due,

and the said treasurer is required to pay said warrant out of any money to the credit of the state school fund to the amount of not exceeding $3,000 annually. Paragraph 1524 of the Civil Code of 1913 establishes the state school fund. The appellant questions the validity of this appropriation.

Claim (q) is one authorized by chapter 1 of title 42 of the Civil Code of 1913, and under paragraph 1461 of title 1, part 3 of the Penal Code of 1913. Paragraph 1465 of said title 1 of the Penal Code requires the auditor to draw his warrants on the state treasurer for all claims approved and allowed by the board of control under the provisions of title 1, and the warrants are made payable out of the prison fund, or out of the general fund. The appellant questions the validity of this appropriation.

Claim (r) is one authorized by subdivision 4 of paragraph 3705, and falls within the same class of claims of which claim (p), *supra*, is one, and the same statutes are applicable to both claims. Likewise the appellant questions the validity of the appropriation applicable to this claim.

Claim (s) is recognized by subdivision 89 of section 1 of chapter 3 of the General Appropriation Bill as a proper claim in the particular that such subdivision purports to appropriate the sum of $2,400, $1,200 to be expended during each of the two years ending June 30, 1916, and June 30, 1917, "to pay for clerical assistance to the state librarian for cataloguing, indexing and cross-indexing the volumes, pamphlets and publications in the state library." The appellant questions the validity of this appropriation.

Claim (t) is one authorized by chapter 1 of title 42 of the Civil Code of 1913. Paragraph 4460, included in said chapter 1, title 42, provides that:

"A sum of money sufficient to carry out the provisions of this chapter is hereby annually appropriated out of the general fund."

The appellant questions the validity of this appropriation.

For convenience the above claims may be placed in five classes, viz.:

Class 1. Claims made payable out of the general fund, under statutes directing the auditor to draw his warrant therefor, when no specific amount of the general fund is otherwise

XVII Ariz.—29

set apart by the statute for the payment of such claims. In this class claims (a), (c), (d) and (j) fall.

Class 2. Claims made payable out of a stated statutory fund to a designated amount annually of such fund. Claim (p) is of such class.

Class 3. Claims payable out of the general fund from appropriations of an amount annually of such fund sufficient for the purposes named, but no specific sum appropriated is named. Claims (b), (f), (i), (q) and (t) are of this class.

Class 4. Claims made payable out of specific sums designated for that purpose by the General Appropriation Bill. Claims (h), (k), (o) and (r) are of this class.

Class 5. A claim made payable out of a specific sum appropriated by the General Appropriation Bill for that purpose. Claim (s) is of this class.

The appellant contends that statutes directing the payment of claims out of the general or other designated fund are not legal appropriations, unless some specific amount of such fund is set aside by such or some other statute for the specific purpose of meeting such payments.

In each instance relative to claims of class 1, *supra,* the statute "applicable to the several claims" authorizes and directs the auditor to draw his warrant in favor of the claimant. Paragraph 78 of the Civil Code of 1913, upon which the appellant largely relies, provides that "no warrant shall be drawn by the auditor . . . unless the money has been previously appropriated by law," is the general rule to be observed by the auditor, but when, as here, a statute is dealing with a special subject, and in relation to such subject directs the auditor to draw his warrant, and makes no exception, whether or not an appropriation has been previously made, the direction in the statute is a command to the auditor, relating to a special, particular matter, and creates an exception to the general rule. The auditor's plain legal duty is to draw the warrant in such cases, not because there is a specific appropriation previously made, but because the statute commands him to draw the warrant in that particular instance. Whether an appropriation has been made is no concern of the auditor. That matter rests solely, in such cases, with the legislative department of the state, and might affect the treasurer's duties, but that is no concern of the auditor.

Classes 2 and 3 are made payable out of designated funds appropriated ''annually'' for that purpose. Class 2 differs in the matter of appropriation from class 3 in the particular that a designated amount of a stated ''fund'' is appropriated annually for class 2 claims, and a ''sufficient'' amount, or some other general term of amount, is used for the purposes of class 3. Appellant contends that appropriations of the description here in question are continuing appropriations and invalid as such, and therefore he is prohibited by paragraph 78, *supra,* from drawing a warrant against them. This contention directly questions the power of the legislative branch of the government to enact such appropriation laws attacked.

The disposition of the public revenues of the state is essentially the province of the legislative branch of the state government. The means used by the legislature in disposing of such revenues is largely within the discretion of that department, and the legislative discretion in that respect can be limited only by the state Constitution. Unless the Constitution prohibits expressly, or by necessary implication, the legislature from disposing of the public revenues of the state by means of general continuing appropriation statutes, the legislature has ample power to enact such statutes, and, when enacted, they are as effective for their purpose as if specific sums were set aside for that purpose. The appellant argues with much force that statutes making annual continuing appropriations of the public revenues are dangerous and tend to open the doors of extravagance and directly lead to the squandering of the revenues. This argument is addressed to the policy of such laws, not to the power of the legislature to enact them. The argument is properly one for the consideration of the legislature, not for the court's consideration. We have been unable, after diligent search, to find any constitutional limitation upon the power of the legislature to enact annual continuing appropriation laws, and appellant has pointed out none. Before the Constitution was adopted such appropriation laws existed on our statute books without question, and at the time of statehood a number of such laws were in force. Section 2 of article 22 of the state Constitution continued in force ''all laws of the territory of Arizona now in force, not repugnant to this Constitution, . . . until they expire by their own limitation or are altered or repealed

by law." Without a doubt paragraph 3571 of the Revised Statutes of Arizona of 1901 was carried forward as a law in force by the said provision of the Constitution, and it was so understood by the first state legislature, which lifted the said paragraph 3571 and inserted it in the Civil Code of 1913 as paragraph 4460 thereof. The legislative policy of this jurisdiction for a quarter of a century has been to make annual continuing appropriations for certain purposes, and the power of the legislature to make such form of appropriations has never before been questioned by anyone, so far as we are informed. Certainly no one has successfully questioned such power. The practice of making such form of appropriations may be open to censure, but to hold such statutes invalid at this late day would serve to upset the machinery of state administration, and would therefore be unpardonable, except upon the authority of express law. The auditor's department would suffer from such ruling fully as much as other departments of the state government. The necessary traveling expenses of the auditor or his deputy are ordered paid out of the general fund of the state by paragraph 68 of the Civil Code of 1913, without further formalities of appropriation. The contention under consideration is without merit as a justification for refusing to obey the commands of the writ.

No error is assigned attacking the validity of the appropriation applicable to classes 4 and 5. The claims specially referred to in the assignments of error are claims (a), (b), (c), (f), (i), (j), (p) and (g). Claim (g) is one of the claims the appellant expressly waives his claim to appeal in the opening brief. All of the remaining claims specially mentioned in the assignments fall within classes 1, 2 and 3, *supra*. The other claims not specifically mentioned in appellant's assignments touching the question of appropriations need no further discussion here as affected by that question.

Appellant asserts that no funds existed in certain appropriations, as a further justification for his refusal to obey the commands of the writ. This question is not attempted to be raised by appellant's pleadings, and while such fact, if it be a fact, would be a justification for refusing to obey one of the commands of the writ as to issuing a warrant, yet that question is not presented for consideration because it was not

pleaded. Certainly the absence of money in the fund does not justify his refusal to issue his certificate as commanded.

Appellant asserted that no funds were appropriated for the payment of the several claims, and such allegation necessarily could be established by the absence of a law making such appropriation, but the existence of a valid law making an appropriation for the claims in question disproves the negative allegation. Whether the funds were actually in existence subject to pay the particular claim is a question of fact determinable from evidence. Whether funds have been appropriated to pay the particular claim is a question of law, determinable by the statutory law of the state. This contention arose from a difference of construction placed upon the vetoes by the Governor of certain parts or provisions of the General Appropriation Bill; the contention being that the statutes appropriating money for certain claims were repealed by express provisions of the appropriation bill, and, as the repealing clauses only were vetoed, the vetoes were ineffective. The results of the vetoes, according to the contention of the auditor, affect each of the last-mentioned claims, viz., claims (a), (b), (c), (f), (i), (j) and (p).

By subdivision 8 of section 1 of the General Appropriation Bill, as passed by the legislature, an appropriation was made covering the salaries of chief clerk and assistant clerk, and purporting to repeal all statutory appropriations for the expenses and purpose of the incorporating department of the corporation commission. The Governor, in the exercise of his veto powers, disapproved of subdivision 8 in its entirety. Claim (a) is such a claim that, if the repealing part of this section is effective as a repeal, paragraph 2273, making appropriations for its payment, would stand repealed.

By subdivision 27 of section 1 of the General Appropriation Bill, as passed by the legislature, an appropriation was made to pay all persons employed by the state tax commission, other than one clerk. This subdivision was vetoed by the Governor in its entirety. Claim (b) is for services of a stenographer employed by the tax commission, and the compensation for such services is made payable out of an annual appropriation made by paragraph 4833 of the Civil Code of 1913. Section 51 of chapter 3 of the General Appropriation Bill, as originally passed by the legislature, purports to repeal

paragraph 4833. The Governor vetoed section 51 in its entirety.

By subdivision 32 of section 1 of the General Appropriation Bill. as originally passed by the legislature, a fund was provided to be known as the game protection fund, and such fund was appropriated to pay certain salaries and other expenses, including "all other necessary and office .expenses of the state game warden," and stating:

"This appropriation shall be in lieu of all appropriations provided for in title XVIII, Penal Code, 1913."

The Governor vetoed said subdivision 32 in its entirety. Claim (c) is such claim as is payable out of the appropriation made by paragraph 686 of said Penal Code.

By subdivision 57 of section 1 of the General Appropriation Bill, the legislature appropriated a specific sum to pay the salary of the citizen member of the board of control for two years. As originally passed by the legislature, said subdivision contained the further provision, viz.:

"Paragraph 4460, Revised Statutes of Arizona 1913, Civil Code, is hereby repealed and all statutory appropriations for the salary provided for in this subdivision are hereby repealed, and the auditor shall draw no warrant against the general or other state fund for the salary provided for in this subdivision otherwise than· is herein directed, the appropriation herein made being in lieu of all such statutory appropriations and is not in addition thereto."

Claim (f) is such claim as is made payable out of the appropriation made by paragraph 4460, attempted to be repealed, and a claim other than for the salary of the citizen member of the board of control. The Governor vetoed that part of said subdivision purporting to repeal paragraph 4460, and his veto extended to all that part of the subdivision quoted above. The Governor approved the subdivision so far as it appropriated a specific sum for the specific purpose of paying the salary of the citizen member and secretary of the board of control.

By subdivision 87 of section 1 of the General Appropriation Bill, the legislature made a specific appropriation for two years to pay for elementary training in agricultural, mining, manual training, domestic science and other vocational pursuits in such normal and high schools as are designated

under the provisions of law to give such training. As originally passed by the legislature, the following was a part of this subdivision, viz.:

"The appropriation herein made for such elementary training is in lieu of all statutory appropriations heretofore made for this purpose, and is not in addition thereto; and the state auditor is hereby directed to draw no warrant against the general or other state fund for the expenses of such elementary training provided for in this subdivision otherwise than is hereby directed."

The words quoted were vetoed by the Governor, while that part of said subdivision making the specific appropriation for the purpose designated was approved. Claim (i) is a claim made payable out of an appropriation made by paragraph 2794 of the Civil Code of 1913, as a claim for the aid to a high school for teaching vocational pursuits, provided by chapter 13, title 11 of the Civil Code.

Subdivision 93 of section 1 of the General Appropriation Bill, as passed by the legislature, purported to set aside a specific sum for two years for the maintenance of the National Guard of Arizona, for the payment of insurance, expenses of instruction and other expenses. This subdivision was vetoed by the Governor in its entirety. Claim (j) is one for expenses of the adjutant general's office, and made payable out of an appropriation made by paragraph 3948 of the Civil Code of 1913. Section 51 of the General Appropriation Bill purported in express terms to repeal said paragraph 3948. The Governor vetoed section 51 of the General Appropriation Bill in its entirety.

Claim (p) is made expressly payable out of the state school fund by paragraph 2705 of the Civil Code of 1913, and paragraph 1524 establishes the "state school fund." The General Appropriation Bill does not seem to deal with these statutes.

For convenience in considering the questions touching the Governor's vetoes, we will classify the said claims with reference to the vetoes as: Claims affected because the Governor's veto extended to an entire subdivision or section of the General Appropriation Bill. Claims (a), (b), (c), (f) and (j) will be considered of this class. Claims affected where the Governor's veto extended to a part less than an entire sub-

division or section of the General Appropriation Bill. Claims (i) and (j) will be considered of this class.

The appellant in his brief discusses the questions presented by the first-mentioned class of claims from a twofold viewpoint: First, from a viewpoint of the power of the legislature to incorporate in the General Appropriation Bill statutes making repeals conflicting with prior appropriations; and, second, from the viewpoint of the power of the Governor to veto the repeals contained in the General Appropriation Bill without vetoing the entire bill.

The legislature enacting the General Appropriation Bill has the same power to act therein as all prior legislatures possessed; no more, no less. The subject operated upon must be one falling within the purview of the General Appropriation Bill; otherwise the legislature has no power to legislate upon the subject under the title of and as a part of the General Appropriation Bill. Section 20 of article 4 of the state Constitution defines the scope of the legislative power while enacting the General Appropriation Bill, and limits that power to "appropriations for the different departments of the state, for state institutions, for public schools, and for interest on the public debt. All other appropriations shall be made by separate bills, each embracing but one subject." Clearly, matters included in the General Appropriation Bill which are not embraced within the subjects therein specified, and properly connected therewith, are such subjects as are not expressed in the title, and are void for that reason, under section 13, part 2, article 4, of the state Constitution. To avoid such legislation the Governor's veto is not essential; the constitutional provision avoids them. Consequently we are now concerned only with the effect of the Governor's veto of subjects properly included in the title of the General Appropriation Bill.

The third clause of section 7 of article 5 of the state Constitution provides:

"If any bill presented to the Governor contains several items of appropriations of money, he may object to one or more of such items while approving other portions of the bill. In such case he shall append to the bill at the time of signing it, a statement of the item or items which he declines to approve, together with his reasons therefor, and such item

or items shall not take effect unless passed over the Governor's objections as in this section provided.''

The first clause of said section 7, article 5, provides:

''Every bill passed by the legislature, before it becomes a law, shall be presented to the Governor. If he approve, he shall sign it, and it shall become a law as provided in this Constitution. But if he disapprove, he shall return it, with his objections, to the house in which it originated, which shall enter the objections at large on the journal,'' for reconsideration.

Prior to statehood and the adoption of the Constitution the duties of the Governor of the territory, relating to the veto power appeared in 1 Supp. R. S. U. S. p. 112, being chapter 212, 44th Cong., 1st Sess., July 19, 1876, as the act appears at page 72, paragraph 4, Organic Laws, Revised Statutes of Arizona of 1901, as follows:

''That every bill which shall have passed the legislative council and house of representatives of the territory of Arizona shall, before it becomes a law, be presented to the Governor of the territory; if he approve it, he shall sign it; but if he do not approve it, he shall return it, with his objections, to the house in which it originated,'' which shall proceed to reconsider it.

Paragraph 58 of the Revised Statutes of Arizona of 1901 is to the like effect.

In *Porter* v. *Hughes*, 4 Ariz. 1, 32 Pac. 165, the supreme court of the territory had under consideration the power of the Governor to veto an item of the General Appropriation Bill and to approve the other portions of the bill. The court construes the above provision of the organic act as conferring on the Governor the power to approve or disapprove such a bill only in its entirety, and vested no power in the Governor to disapprove a section of such a bill and approve the remaining portions of the said appropriation bill. This decision was filed in 1893, and was never thereafter questioned, so far as the supreme court reports disclose. The general language of the organic act *supra* is adopted as the language of the first clause of section 7 of article 5 of the state Constitution, and, standing alone, must be given the same construction as the territorial court placed upon the original provision. The constitutional convention was doubtless fa-

miliar with the said limitation upon the Governor's veto power as interpreted in *Porter* v. *Hughes, supra,* and added the third clause, viz.: "If any bill presented to the Governor contains several items of appropriations of money, he may object to one or more of such items while approving other portions of the bill"—thereby creating a clear exception to the general rule as to all bills containing several items of appropriations of money. The word "item" was treated in *Porter* v. *Hughes* as having reference to a section of the appropriation bill reading as follows:

"For territorial salaries of the district judges, as provided by law, to be expended under the direction of the territorial auditor, to be paid in quarterly installments, $7,200.00; one-half to be expended in each of the years 1887 and 1888."

The exception created by the third clause of section 7, article 5 of the Constitution, was inserted for the evident purpose of removing the limitation on the Governor's veto power in the respect under consideration, and thereby empowering the Governor to veto any separate section of the General Appropriation Bill which had for its subject the appropriation of money and directions as to its disposition. "Item," therefore, is used synonymously with "subject," "distinct or separate parts," and an objection and disapproval by the Governor of an item or several items of appropriations of money has reference to the distinct subject or part for which the appropriation is made and all its incidents. In *Commonwealth* v. *Barnett,* 199 Pa. 161, 55 L. R. A. 882, 48 Atl. 976, the term "item," as used in article 4, section 16, of the Constitution of Pennsylvania, a similar provision, was held to mean "the particulars, the details, the distinct and severable parts of the appropriation," and is "used interchangeably in the same sense" with the word "part." See 4 Words and Phrases, 3797.

Subdivision 8 of section 1 of the General Appropriation Bill, subdivision 27 of said section 1, subdivision 32 of said section 1, subdivision 93 of said section 1, and section 51 were disapproved in their entirety. These subdivisions and section are distinct and separable parts of the General Appropriation Bill, and the Governor's vetoes of such items were within his constitutional power. Consequently no appropriations were made by the said appropriation bill for claims (a),

(b), (c) and (j), and so far as such subdivisions attempted to substitute any of said items of appropriation for existing appropriations, they were ineffective for that purpose.

Section 51 of said General Appropriation Bill is a distinct and separable part or item of said General Appropriation Bill. The Governor disapproved such item or distinct separable part of said bill, and such veto was exercised within the legal powers of the Governor. Section 51, therefore, never became effective, and consequently all the statutes attempted to be expressly repealed by said section 51 of said General Appropriation Bill remain valid and subsisting laws. Claims (b) and (j) are unaffected by said attempted repeal.

Section 44 of said General Appropriation Bill attempted to appropriate a sum of money for a state common school fund, and directed the payment of all expenses approved by the state board of education out of that fund. Section 51 of said appropriation bill having been disapproved by the Governor within his constitutional powers, the effect was to annul said attempted appropriation, and left in force paragraph 1524 of the Civil Code of 1913, providing a fund from which claim (p) is payable.

Subdivision 57 of section 1 of the General Appropriation Bill set forth a specific sum of money "to pay the salary of the citizen member of the board of control for each of the two succeeding years." Following this item appears the following language, viz.:

"Paragraph 4460, Revised Statutes of Arizona, 1913, Civil Code, is hereby repealed and all statutory appropriations for the salary provided for in this subdivision are hereby repealed, and the state auditor shall draw no warrant against the general or other state fund for the salary provided for in this subdivision otherwise than is herein directed, the appropriation herein made being in lieu of all such statutory appropriations and is not in addition thereto."

These words quoted were disapproved by the Governor; the item being otherwise approved. The salary of the citizen member of the board of control is not involved in this case. The matters of prior appropriations as they affected the salary of the citizen member of the board of control are matters incidental to the item of appropriation for the purposes of said salary. In so far as this item of appropriation con-

cerns the salary of the citizen member of the board of con-
trol, the language quoted and disapproved was clearly mat-
ter incidental to the appropriation and an inseparable part
of the item. The disapproval of such inseparable part is
without effect; the main part of the item having been ap-
proved, as a necessary deduction from the rule stated above.
Claim (f) is a claim other than for the salary of the citizen
member of the board of control, and paragraph 4460 of Civil
Code of 1913 makes appropriation for the payment of the
class of claims to which claim (f) belongs. So far as the
attempted repeal of paragraph 4460 in subdivision 57, *supra,*
was intended to affect claims other than the salary of the
citizen member of the board of control, the legislature acted
beyond its power as limited by section 13 of part 2, article 4,
of the state Constitution. The subject legislated upon in sub-
division 57 is the salary of the citizen member of the board
of control, and an attempt to repeal an appropriation statute
affecting some subject other than such as necessarily affect
the salary of such officer is not dealing with matters properly
connected with the subject under consideration. While the
veto of a part of subdivision 57 was clearly ineffective as an
annulment of that part of the item aimed at, yet the attempt
to repeal paragraph 4460 as to all purposes was as clearly
in excess of the power of the legislature to enact a general
appropriation bill, and was void as to all matters other than
matters connected with the salary of the citizen member of
the board of control. Claim (f) remains a valid claim pay-
able as directed by paragraph 4460 of the Civil Code of 1913.

The same rule applies to subdivision 87 of section 1 of the
General Appropriation Bill. This item attempts by general
terms to repeal paragraph 2794 of the Civil Code of 1913,
making an appropriation to carry out the provisions of
chapter 13, title 11, for all purposes. Claim (i) is one for
aid to a high school which accrued for the year 1913–14, prior
to the going into effect of the General Appropriation Bill,
and the appropriation made in the bill was distinctly made
"to pay for elementary training in agricultural, mining,
manual training, domestic science, and other vocational pur-
suits in such normal and high schools as are designated under
the provisions of law to give such training, there is hereby
appropriated the sum of $73,000.00; $36,500.00 or so much

thereof as may be needed to be expended during each of the years ending June 30, 1916, and June 30, 1917.''

The General Appropriation Bill became effective June 9, 1915. Claim (i) is therefore payable out of the appropriation made by subdivision 87 of section 1, and its payment is unaffected by the repeal of paragraph 2794, *supra,* as an appropriation to pay the claims of high schools for state aid.

Claim (a) is authorized by subdivision 89 of section 1 of the General Appropriation Bill, viz.:

''89. To pay for clerical assistance to the state librarian for cataloguing, indexing and cross-indexing the volumes, pamphlets and publications in the state library, there is hereby appropriated the sum of twenty-four hundred dollars ($2400.00); twelve hundred dollars ($1200.00), or so much thereof as may be needed, to be expended during each of the years ending June 30, 1916, and June 30, 1917.''

Subdivision 90 of section 1, General Appropriation Bill, provides:

''All fees received by the clerk of the Supreme Court shall be paid into the state treasury and shall be set aside for the maintenance of the state library, and all such fees are hereby appropriated for the maintenance of said state library for the payment of the salary provided for in subdivision 89. The appropriation herein made is not in addition to any other maintenance fund but is in lieu of all statutory appropriations for the maintenance of said state library.''

The last sentence quoted was disapproved by the Governor, and the other preceding portions of subdivision 90 were approved. The disapproval of the sentence under the rule *supra* was without effect upon the salary of the assistant to the librarian. Whether any money was in the fund so provided to pay the salary of the said assistant is a question that would affect the performance of the auditor's duty only as to whether a warrant or a certificate would be issued by him. He does not interpose such objection.

The same question may affect each of the claims involved. The claims for which definite, fixed and specific appropriations have been made, and which appropriations are payable out of the general fund, are the first charges against such general fund, and any moneys in the general fund to the extent thereof shall be preserved for such payments. Other

appropriations payable out of the general fund, but which are not specific in amount, shall be paid out of any moneys remaining in the fund not otherwise specifically appropriated. When a claim is payable out of a specific fund, and, if it is exhausted, then out of the general fund, the specific fund must be exhausted before recourse may be had to the general fund for payment. These are essentially clerical matters of bookkeeping determinable by the auditor with reference to the treasurer's books, over which the auditor has a measure of supervision, by auditing and by comparing with his own books. Paragraph 70, subdivision 8, and paragraph 80, Civil Code 1913.

The return of the defendant to the rule to show cause why the mandate of the court was not obeyed fails to set forth a justification in law, and the judgment of the court making the rule absolute is, in substance, correct.

The judgment of the court will be modified in the particulars where the auditor is commanded to draw his warrant against funds other than specified in this opinion, as the case may be, and, as modified, the judgment is affirmed.

Affirmed.

ROSS, C. J., and FRANKLIN, J., concur.