[Civil No. 1542. Filed February 16, 1918.]

[170 Pac. 792.]

ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. COUNTY OF GRAHAM, a Municipal Corporation, Appellee.

1. STATUTES — REPEAL — TAXATION — LEVY FOR SCHOOLS. — Laws of 1915 (1st Sp. Sess.), chapter 4, section 4, subdivision "a," levying a tax of $100,000 to defray the expense of maintenance and support of the state common schools during the fiscal year ending June 30, 1916, being dependent upon General Appropriation Act, chapter 3, section 44, which was vetoed by the Governor, did not repeal by implication Civil Code of 1913, paragraph 2815, making a general levy to raise a fund of $500,000 for school purposes, to be known as a state common school fund.

2. COUNTIES—ESTIMATES OF COUNTY EXPENSES—INCLUSION OF BRIDGE AS COUNTY IMPROVEMENT—STATUTE.—A bridge constructed over a river at an expense of $18,000 to the county was a "public improvement" within Civil Code of 1913, section 4840, requiring that the county board of supervisors' estimates of the amounts required to meet public expenses and to be raised by taxation shall include the amount required for each public improvement, etc.

3. BRIDGES—CONSTRUCTION AND LEVY BY BOARD OF SUPERVISORS—ELECTION—STATUTE.—Civil Code of 1913, section 5094, making it the duty of the county board of supervisors in certain contingencies to call an election to determine the question as to whether a bridge shall be constructed and for authority to raise "funds necessary to pay the same by taxation as provided by law," makes it a condition precedent to the levying of taxes to construct a bridge by the board of supervisors that the taxpayers of the county shall first authorize the levying of such taxes.

4. BRIDGES — CONSTRUCTION BY COUNTY — "TAXATION AS PROVIDED BY LAW"—STATUTE.—Civil Code of 1913, section 5094, making it the duty of the county board of supervisors to call an election to determine whether a bridge shall be constructed, and for authority to raise necessary funds by "taxation as provided by law," means by direct levy upon the taxable property of the county in accordance with the tax-levying statutes (title 49, chapter 3).

5. BRIDGES—CONSTRUCTION BY COUNTY SUPERVISORS—TAXATION.—Civil Code of 1913, section 5099, providing that county board of supervisors shall cause amount necessary for payment of cost of bridge to be raised by direct levy on taxable property of county, is at most a grant of power authorizing the raising of the necessary funds by taxation as provided by tax-levying statutes (title 49, chapter 3).

6. Counties—Taxation—Levy by Board of Supervisors—Amount.— A county board of supervisors, in levying taxes for all county purposes, including the cost of construction of a bridge, in the year 1915 was authorized to exceed the levy of the preceding year ten per cent and no more, and any excess over such amount contained in the levy was beyond its jurisdiction, and when the board discovered its levy was beyond the limit, it was its duty to scale the estimate down to comply with the limitations fixed by Civil Code of 1913, sections 4839–4842.

7. Taxation—Legislature as Source of Taxing Power.—The legislature is the source of the taxing power, and without a grant from it no taxes can be levied or collected.

[As to the purposes for which the power of taxation may be exercised, see notes in 2 Am. St. Rep. 94; 16 Am. St. Rep. 365.]

APPEAL from a judgment of the Superior Court of the county of Graham.   A. G. McAlister, Judge.   Affirmed as to one cause of action; reversed and remanded as to second cause of action.

Messrs. Rawlins & Little, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. R. Wm. Kramer and Mr. G. W. Harben, Assistant Attorneys General, for Appellee.

CUNNINGHAM, J.—The plaintiff's first cause of action is based upon the proposition that the tax levy for the common schools of the state for the fiscal year ending June 30, 1916, was fixed by subdivision (a) of section 4 of chapter 4 of the Session Laws of the First Special Session, effective June 10, 1915, reading as follows:

"Sec. 4. There is hereby levied upon the real and personal property within the state of Arizona, for the fiscal year ending June 30, 1916, the rate of taxation to be fixed by the state board of equalization at its meeting to be convened on the first Monday in August, 1915, based upon the total assessed valuation of all property in the state of Arizona for the year 1915, the following additional taxes:

"(a) To defray the expenses of the maintenance and support of the state common schools during the fiscal year ending June 30, 1916, one hundred thousand ($100,000.00) dollars."

The appellant contends that said statute repeals by implication paragraph 2815 of the Civil Code of Arizona of 1913,

a statute making a general levy to raise a fund of $500,000 for school purposes, and the fund so raised when collected to be known as a state common school fund; that said chapter 4 was intended by the legislature to supersede paragraph 2815 and reduce the amount of the fund to be levied for state common school purposes so that the fund for that purpose required to be raised for the fiscal year ending June 30, 1916, was limited to $100,000. Plaintiff alleges that the state board of equalization by its order, without authority of law, required the sum of $500,000 to be raised for the state common school fund, and that in obedience to such order the board of supervisors of Graham county duly levied a rate of tax on the property within their county sufficient to raise Graham county's portion of said fund, and that plaintiff was required to pay, and did pay under protest of such excessive levy, the sum of $1,774.45 taxes in excess of the amount it would have been required to pay had the amount of the state common school fund been fixed at $100,000, as required by said chapter 4. Defendant demurred to this cause of action, and its demurrer was sustained.

In *Callaghan* v. *Boyce,* 17 Ariz. 433, 153 Pac. 773, we held that the veto of section 51 of chapter 3 of the First Special Session of the Second State Legislature, effectively disposed of such section of that chapter. Section 44 of the same chapter 3 as passed by the legislature made an appropriation of $100,000 for the state common school fund for the year ending June 30, 1916, and further provided that such appropriation of such sum for that purpose was made in lieu of the appropriation directed to be made in paragraph 2815 of the Civil Code of Arizona of 1913, ''for the purposes and objects provided for in this section (section 44), and is not in addition thereto.'' Section 51 of said chapter 3 as originally passed expressly repealed paragraph 2815. Both sections 44 and 51 were vetoed by the Governor, and in *Callaghan* v. *Boyce, supra,* we held that the said veto was effective and absolutely nullified both sections, thereby in effect holding that paragraph 2815 of the Civil Code of Arizona of 1913 was unaffected by such attempted legislation, and remained in full force and effect in its entirety. Chapter 3, *supra,* is the general appropriation bill. Said chapter 4 is designated as an act to provide for the levy of an annual tax for each of the years ending June 30, 1916, and June 30, 1917, for the pur-

pose of paying to defray the expenses of the maintenance and support of the common schools, etc. The sums to be raised by said levying statute correspond in amounts and purposes with the provisions of the said general appropriation act, and in reference to the levy for the state common school fund the vetoed portions of the appropriation act are followed. Chapter 4 in this respect is the counterpart of chapter 3, and to all intents and purposes depends upon chapter 3. It seems that, as section 44 of chapter 3 never became a law because of the Governor's effective veto, therefore it follows that section 4 of chapter 4, making a levy to raise a fund for the state common schools in the amount of $100,000, provided for the raising of a fund by taxation in an amount not fixed by legislative appropriation. The amount of the fund for state common school purposes, as fixed by paragraph 2815 of the Civil Code of Arizona of 1913, a valid and subsisting law, is the sum of $500,000, and the same paragraph fixing that amount of appropriation for such purpose levies a tax to raise the said amount. Whether section 4 of chapter 4, *supra*, requiring a fund in the sum of $100,000 as an additional tax, authorizes the state board of equalization to levy a tax in amount sufficient to create a state common school fund of $600,000, or $100,000 in addition to the $500,000 fund required to be raised by paragraph 2815, is a matter not requiring our determination, for the reason no such levy was made and the question is not raised. I am certain that the board of equalization acted wholly within the scope of its authority, conferred by paragraph 2815 of the Civil Code of Arizona of 1913, by ordering raised by taxation a fund for state common school purposes in the amount of $500,000, and the board of supervisors of appellee county were required to raise that county's portion of such fund, and appellant's property was legally taxed for that purpose. No error was committed by the court in sustaining the demurrer to this cause of action.

Plaintiff's second cause of action is based upon an alleged excessive tax levy by the board of supervisors of said county for the year 1915. The complaint alleges, among other things, as follows:

"(1) That heretofore the board of supervisors of the said county of Graham attempted to levy and assess upon the taxable property in said county certain rates of taxation for

various county purposes exclusive of taxes for school purposes, and that the taxes at the several rates so fixed by said board of supervisors upon property of the plaintiff in said county for the year 1915 amounted to the sum of $27,663.38; that the taxes so attempted to be levied by the said board of supervisors of the said county of Graham for the year 1915 exclusive of taxes for school purposes, aggregated a total sum of money, exclusive of taxes for school purposes, of more than ten per centum greater in amount than the total sum levied and collected as taxes in said county for other than school purposes from all sources during the next year prior to the year 1915, and that the taxes assessed and levied upon the property of the plaintiff in said county exceeding ten per cent greater in amount than the total sum levied and collected for the year prior to the year 1915, and exceeding the taxes that would have been levied and collected at a rate sufficient to produce sums aggregating ten per cent greater than the amount of taxes levied in said county for other than school purposes for the year 1915, amounted to the sum of $4,361.68. . . . ''

The complaint further shows that plaintiff, at the time of paying the half-year taxes, included in such payment one-half of said alleged excessive amount, viz., $2,180.84, but paid such excessive amount under protest, and by this action is seeking to recover such sum so paid.

The defendant county demurred to the complaint upon the grounds that the facts stated are insufficient to constitute a cause of action, and answered. The demurrer was overruled. Whereupon the attorneys for the respective parties entered into a stipulation of facts. The cause was submitted, the issue joined, to the court upon the facts stipulated, and judgment for the defendant county followed. The plaintiff appeals, and assigns, among other objections, that the court erred in rendering judgment for appellee and against appellant upon the agreed statement of facts, for the reason ''that said facts show that appellee, for the year 1915, levied and collected a sum ten per centum greater in amount than the total sum levied and collected from all sources, for all purposes other than school purposes, during the year next prior to that in which the levy was made, and said excess was in violation of paragraphs 4839 and 4842 of the Code of 1913.''

The same question is raised in another assignment by alleging a different reason for the alleged error, viz., the including of the cost of a bridge in the levy made, a particular item of $18,000, which is alleged to have increased the levy to an excessive amount without authority of law. This is the vital question in the case, and the real matter in controversy.

The stipulation of facts in the record sets forth the following, applicable to the question involved, to wit:

"(5) That in the year 1915 the board of supervisors of said county levied on the taxable property of and in said county taxes for various purposes, exclusive of all taxes for school purposes; that the total amount of taxes levied by said board in the year 1915, for other than school purposes aggregated a total sum of money of more than ten per centum greater than the total sum levied by said board in said county, for other than school purposes, in the year 1914; that is, excluding all levies for school purposes in the years 1914 and 1915, and including in the levy of the year 1915 the $18,000 for the bridge hereinafter mentioned, the total levy in the year 1915 was and is more than 110 per centum of the levy for 1914; that the taxes levied on plaintiff's property in said county in the year 1915, exclusive of all levies therein for school purposes, and in excess of 110 per centum of such levy for the year 1914, amounted and amounts to $4,361.68; that said taxes levied by said board in the year 1915, for other than school purposes, included the sum of $18,000, which sum was authorized by a special election held in the said county on the 28th day of December, 1914, by the property tax paying electors of said county, for the sole purpose of constructing a bridge across the Gila river in said county; that said levy of $18,000 was not evidenced by any bond or obligation, except as called for by paragraphs 5094 to 5099, both inclusive, of the Revised Statutes of Arizona of 1913; that it was and is said levy of $18,000 alone that has caused said levy of $4,361.68 on plaintiff's property in the year 1915, and which plaintiff complains and contends was and is excessive. Plaintiff contends that the ten per cent limitation prescribed in paragraphs 4839 and 4842 of the Revised Statutes of 1913 of Arizona applies to said levy of $18,000 for said bridge, though authorized by said election as aforesaid. Defendant contends that said limitation does not apply

to the said $18,000, but that it is fully and exclusively authorized by said paragraphs 5094 to 5099, both inclusive, Revised Statutes of 1913; that during the years 1914, 1915, and 1916 the total indebtedness of said county did not and does not exceed 2 per cent of the taxable property of said county.''

To determine the correctness of appellant's contentions, we must understand the meaning of the statutes applicable to the levy. Paragraph 4839 of the Civil Code of 1913, in so far as this case is affected, is as follows:

''There shall be levied annually upon the real and personal property within the state (for state purposes); . . . and upon the same property and upon the same valuation the board of supervisors of each county shall levy and collect for the same fiscal year, on an estimate for county purposes, additional taxes for such purposes which together with other sources of revenue, shall not, however, aggregate a total sum of money, exclusive of taxes for school purposes, ten per centum greater in amount than the total sum levied and collected from all sources, other than for school purposes, during the next year prior to that in which the levy is made. The said estimate shall contain a statement of the amount of money required for each item of expenditure necessary for county purposes, together with the amounts necessary to pay the interest and principal of the county bonds, as provided by law, and the said estimate shall be entered upon the minutes of the board.''

Paragraph 4840, Id., prescribes when the estimate is to be made, its contents, among other things, showing:

''Estimates of the different amounts required to meet the public expense for the ensuing year, and to be raised by taxation in such county. . . . Such estimates shall be fully itemized, showing under separate heads the amount required for each department, public office, and public official, for each public improvement, for the maintenance of each public building, structure, or institution, the salary of each public officer or employee, the maintenance of public highways, roads, streets, and bridges, and the construction, operation, and maintenance of each public utility, and shall contain a full and complete disclosure and statement of the contemplated expenditures for the ensuing year, showing the amount proposed to be expended from each separate fund, and the total amount of public expense, and shall enter the same on

the minutes of the board with the estimates of the previous year. Said statement shall also contain an estimate of the receipts for the previous and ensuing year from the sources other than direct property taxation, and the amount or amounts proposed to be raised by taxation upon the real and personal property of such county, city or town.''

Paragraph 4841 requires notice to be given of the filing of such statement, and the estimate is required to be published.

Paragraph 4842 requires the boards of supervisors to meet at a specified date previous to the day on which they levy taxes at a time and place designated in such notice, and hear complaints by taxpayers in favor of or against any proposed tax levies. When such hearings shall have been concluded, the board of supervisors shall adopt the estimate as finally determined upon.

''All taxes shall be levied or voted in specific sums and shall not exceed the amount specified in such published estimates, and in no event shall the aggregate amount of taxes to be raised, excepting taxes for school purposes, exceed ten per centum greater in amount than the total sum levied and collected from all sources, for all purposes other than school purposes, during the year next prior to that in which the levy is made.''

These provisions set forth the duties of the boards of supervisors with regard to the general tax levy. The aggregate amount of the levy is arrived at by means of the statement of an estimate of the various items of necessary county expenditures, in other words, by preparing a ''budget'' of expenses for county purposes. Such ''budget'' must include an estimate of the amount required for each ''public improvement'' and an estimate of the amount required for the ''construction, operation and maintenance of each public utility.''

Embraced within the expressions ''public improvement'' and ''public utility'' is necessarily the construction of a bridge for public use. The construction of a bridge may be both a public improvement and a public utility. If the bridge here in question is such a public improvement or public utility as the board of supervisors are required to include in the statement referred to in making up the annual budget for the year 1915, then the cost of construction of such bridge must become an item going to make up the total amount of

the tax levy for that year. The evident purpose of the legislature by the enactment of this budget law is to limit the power of boards of supervisors in the amount of increase in the tax levy each successive year. The power of taxation is delegated to the boards of supervisors for county purposes, and the discretion is given the boards to exercise the delegated power within designated bounds. Paragraph 5093 of the Revised Statutes of Arizona of 1913 (Civ. Code), clearly sets forth the limitations within which the boards of supervisors may exercise discretion in certain particulars, viz.:

"Boards of supervisors of the counties of this state are authorized and empowered to construct and maintain a bridge or bridges across streams that all or a portion of the time cannot be safely crossed with wagons or automobiles, whether such bridge or bridges is or are to be constructed, either wholly or in part, within or without the corporate limits of any incorporated city or town of any such counties, provided, however, that the cost of any such bridge shall not exceed the sum of ten thousand dollars."

To a certainty, the construction of a bridge at a cost of $10,000 or less is a matter in the sound discretion of the board of supervisors, and the cost of construction is an item which must be shown in the statement of estimated total expenses of the county. The taxpayers are entitled to have notice of such determination of the board of supervisors, to the end that objections thereto may be timely raised and the amount reduced or omitted altogether, after hearing. On the other hand, whenever the taxpayers of the county, to the number of 100 or more, present their petition to the board of supervisors, requesting such board to construct and maintain a bridge at a designated point within the county, with the amount of the estimated cost to the county for the construction of such bridge, "it shall be the duty of said board of supervisors to forthwith call a special election of the taxpayers as shown by the last county tax-roll of said county, giving thirty days' notice of the time of holding said special election in said county, for the purpose of submitting to the said taxpayers the proposition of constructing such bridge at the site mentioned in the petition and authorizing the raising of the funds necessary to pay the same by taxation as provided by law." Paragraph 5094, Revised Statutes of Arizona 1913 (Civ. Code).

"Upon the determination of such special election, by a majority of the taxpayers voting at such election, at which point . . . such bridge . . . shall be constructed, it shall be the duty of said board of supervisors to proceed forthwith to construct such . . . bridge across the said stream, at the point . . . designated at such special election, at a cost to the county not exceeding the amount specified in the said notice of election." Paragraph 5097, Id.

"The board of supervisors shall cause the amount necessary for the payment for such bridge . . . to be raised by direct levy upon the taxable property of said county." Paragraph 5099, Id.

Such was the procedure followed by the taxpayers in creating the item of $18,000 complained of in this cause of action. The board of supervisors is given no discretion in the matter, but act ministerially in levying the tax to pay the cost of the construction of a bridge in such circumstances. The expression "shall cause the amount necessary for the payment of such bridge to be raised by direct levy upon the taxable property of said county," is the command of the state, and may not be questioned by the board of supervisors by means of a budget statement and estimate, nor by the taxpayers in objections to such statement. The levy for such purpose is a levy at the behest of the state by express sanction of the taxpayers affected, and not for a county corporate purpose.

I am of the opinion that chapter 3, title 49, prescribing the limits of the total amount of the tax levy for a given year for county purposes, does not come into conflict with the provisions of chapter 4 of title 50, requiring the board of supervisors to levy a direct tax to raise an amount necessary to pay for the construction of a bridge authorized by the taxpayers at a special election called and held for that purpose, but is a distinct separate matter.

The bridge statute (paragraphs 5094 to 5099 of chapter 4, title 50) was in existence at the time chapter 3, title 49, became a law. It will not be presumed that this subsequent general legislation was intended either to repeal or qualify the power of taxation given in and essential to the integrity of the then existing chapter on roads and bridges in the absence of specific reference to such existing statute. "A general later [affirmative] law does not abrogate an earlier spe-

cial one by mere implication. . . . It is usually presumed to have only general cases in view and not particular cases, which have been otherwise provided for by the special act.'' Endlich on Interpretation of Statutes, § 223.

"It has come to be an established rule in the construction of statutes that a subsequent act treating a subject in general terms, and not interdicting the provisions of a prior special statute, is not to be considered as intended to affect the more particular and specific provisions of the earlier act, unless it is absolutely necessary so to construe it in order to give its words any meaning at all. This rule is founded upon or expressed by the maxim, *'Generalia specialibus non derogant.'*" Black on Interpretation of Laws, p. 116; *Burnett v. Maloney,* 97 Tenn. 697, 34 L. R. A. 541, 544, 37 S. W. 689.

Furthermore: "Every law which imposes, continues, or revives a tax shall distinctly state the tax and the objects for which it shall be applied; and it shall not be sufficient to refer to any other law to fix such tax or object.'' Section 9, art. 9, State Constitution.

Hence the enactment of chapter 3, title 49, limiting the amount of the tax levy for county purposes for a given year to a sum in the aggregate not greater than ten per centum more than the sum levied and collected from all sources during the year next prior to the year for which the levy is made, has no reference to the levy of a tax to pay for the cost of the construction of a bridge, the cost being fixed by the taxpayers at a special election called and held in strict compliance with chapter 4, title 50, of the Civil Code of Arizona of 1913.

It follows that the board of supervisors acted within the authority of law by including within the aggregate amount of the tax levy for the year 1915 the item of $18,000, the cost of the construction of a bridge across the Gila river, authorized at a special election lawfully called and held in pursuance to chapter 4 of title 50 of the Revised Statutes of 1913 (Civ. Code). If the statutes are given the construction for which the appellant contends, then the result will be that the results of a special bridge election held in strict compliance with the provisions of chapter 4 of title 50 cannot be enforced unless the board of supervisors see fit to include the cost of construction of the bridge in the county budget, and in that indirect manner nullify the effect of the special election. If

such result is possible, chapter 4 of title 50, providing for a special bridge election, is futile, meaningless, and not enforceable.

ROSS, J.—I cannot agree with Justice CUNNINGHAM'S disposition of the second cause of action. It is agreed by the parties that the county budget for Graham county, for all purposes except school purposes, in the year 1915 was more than 110 per centum of the county's budget for the preceding year. The stipulation is that appellant contends that the ten per centum limitation prescribed in sections 4839–4842 of the Civil Code applies to the levy of $18,000 for the bridge that was constructed, although authorized by an election of the qualified taxpayers of the county; and appellee contends that said limitation does not apply to said $18,000. Section 4840 requires the board of supervisors "to make estimates of the different amounts required to meet the public expense for the ensuing year, and to be raised by taxation in such county." The estimates shall include "the amount required for each department, public office, and public official, for each public improvement, for the maintenance of each public building, structure, or institution, the salary of each public officer or employee, the maintenance of public highways, roads, streets, and bridges, and the construction, operation, and maintenance of each public utility." These estimates, when finally determined upon by the board of supervisors, are the bases upon which the rate for the county for the current year is to be fixed, "and in no event shall the aggregate amount of taxes to be raised, excepting taxes for school purposes, exceed ten per centum greater in amount than the total sum levied and collected from all sources, for all purposes other than school purposes, during the year next prior to that in which the levy is made." Paragraph 4842.

It goes without saying that the bridge constructed over the Gila river, at an expense of $18,000 to the county, was a "public improvement," and was as much within the terms of section 4840 as any other of the enumerated purposes for which the board was authorized to levy and collect taxes. The county expenses for which the board, under the tax levy statute, is to provide are all incurred under other provisions of the law of no concern to the board in fixing the tax levy for county purposes, other than to impose the duty of making

the levy. Thus the law, under separate enactment, fixes the salary of each public officer or employee of the county; it provides for the maintenance of public highways and public buildings, structures, and institutions, and by separate enactment it provides for the making of public improvements such as bridges. Expenses for all of these are thrown into the same category, and must be included in the county budget of the county as provided for in section 4840. The item of $18,000 for the construction of the bridge was as legitimately included within the estimate of county expenses of Graham county for the year 1915 as the items for payment of public officers of the county, or the item for the maintenance of public highways and public buildings and institutions. Indeed, it is imperative, under the law, that it should be included if funds are to be raised for its liquidation.

Chapter 4, title 50, entitled "Bridges on Public Highways" is not a tax-levying statute. In it is granted authority to construct bridges and to contract debts for that purpose. Section 5094 thereof makes it the duty of the board of supervisors, in certain contingencies, to call an election to determine the question as to whether a bridge shall be constructed or not, and for authority to raise "funds necessary to pay the same by taxation as provided by law." The last expression in this section makes it a condition precedent to the levying of taxes to construct the bridge by the board of supervisors that the taxpayers of the county shall first authorize the levying of such taxes, but it also requires that the fund for that purpose shall be, "by taxation as provided by law." This, of course, means by direct levy upon the taxable property of the county in accordance with the provisions of the tax-levying statute, to wit, chapter 3, title 49, of the Civil Code. And section 5099, which provides that:

"The said board of supervisors shall cause the amount necessary for the payment for such bridge or bridges to be raised by direct levy upon the taxable property of said county" is only confirmatory of and supplemental to the authority extended to the board under the law as contained in section 5094, and, at most, is a grant of power "authorizing the raising of the funds necessary to pay the same by taxation as provided by law"; that is, according to the limitations and restrictions as contained in the levying statutes, *supra.*

The law authorizing the building of bridges by the board of supervisors necessarily implies the right and power of the board to contract debts therefor. It makes it the duty of the board of supervisors to pay these debts or expenses by direct levy upon the taxable property of the county, but it does not, in terms or by implication, authorize the board to levy taxes upon the property of the county for this purpose in disregard of the limitations contained in sections 4839–4842.

The board of supervisors, in levying taxes for all county purposes in the year 1915, was authorized to exceed the levy of the preceding year ten per centum and no. more, and any excess over that amount contained in the levy was beyond its jurisdiction. When the board discovered that the levy was excessive and beyond the limit as fixed by law, it was its duty to scale the estimate down so as to comply with the limitations fixed by sections 4839–4842. It was for the board to determine which item or items of the estimates for county purposes should be reduced so as to conform to the limit fixed by law. If the law limits the expenditures of the county for the current year so that the payment of some of the debts lawfully and rightfully contracted must be postponed, it is not the fault of the board.

The legislature is the source of the taxing power, and, without a grant from it, no taxes can be levied or collected. It has seen fit to limit this power, except in special enumerated cases, so that the burden on the taxpayer for the current year may not be more than ten per centum greater than the preceding year. This was done in the interest of the taxpayer, a policy based upon common sense and reason, and upon an experience and knowledge that, unless some restraint be placed upon counties, the burdens of taxation may be severely hard upon the taxpayers. To emphasize the mandatory and prohibitory character of the requirements of the tax-levying statute, the legislature, in section 4843, provided that any officer violating any of the provisions of sections 4840, 4841, and 4842 should be guilty of a misdemeanor.

If the board of supervisors can expand the limit fixed by law for one county purpose, it can do the same for any and all county purposes. If the board may ignore the statute for one purpose, then it is frittered away, and the burden of taxation which it was intended to curb may be extended without limit.

The action is to recover $2,180.84 which the appellant claims it was compelled to pay, in the way of taxes for the year 1915, in excess of the limitations fixed by sections 4839–4842, and this contention is conceded by the appellee unless the item of $18,000 for the bridge is excepted from the terms of said limitation. The bridge, being a public improvement, and one of the things expressly mentioned in the tax-levying statute for which the board of supervisors is required to make estimates and include in the county budget, as has been seen, its cost could not be superadded to the budget, already as large as the highest rate of taxation allowed under the law, unless expressly excepted and provided for by the tax-levying statute or some other provision of law.

In *Southern Pacific Co.* v. *Yuma County, ante,* p. 211, 168 Pac. 507, we had under consideration the annual tax budget of Yuma county. It was an action to recover interest on road bonds of the county which was included in the county budget, causing an excess over the limitation provided in sections 4839–4842. In that case we held that the levy to pay the interest on the road bonds was expressly provided for by section 5278 of the Civil Code, wherein it is provided that the board of supervisors shall "levy and cause to be collected a tax in addition to the amount of taxes which now or may hereafter be authorized by law for state and county purposes, at the same time and in the same manner as other taxes are levied and collected by such county. . . ." There is no such provision authorizing the board of supervisors to levy and collect taxes "at the same time and in the same manner as other taxes are levied and collected by such county," in chapter 4, title 50, under the terms of which the bridge in question was constructed.

The judgment of the lower court on the first cause of action should be affirmed; but, for the reasons set forth in the foregoing opinion, the judgment on the second cause of action should be reversed, with directions to the superior court to enter judgment on said second cause of action in favor of appellant.

FRANKLIN, C. J.—I concur in the opinion of Mr. Justice CUNNINGHAM, affirming the judgment as to the first cause of action, and I concur in the views expressed by Mr. Justice ROSS, reversing the judgment as to the second cause of action.