In the Matter of the Application of JAMES FLAHERTY, Respondent, for a Writ of Mandamus against CHARLES L. CRAIG, as Comptroller of the City of New York, Appellant.

New York (city of) — mandamus — salaries of court clerks and attendants Supreme Court, Kings county — after annual budget has been appropriated by board of estimate, justices of Supreme Court, Kings county, cannot increase salary of court attendant — when mandamus will not lie to compel audit of such increase.

Where the estimate for salaries of court clerks and attendants in the Supreme Court, Kings county, submitted to the New York city board of estimate and apportionment by the justices of that court residing in Kings county under the authority of the statute (Judiciary Law [Cons. Laws, ch. 30], § 168) fixed such salaries for the ensuing year and the amount thereof was appropriated in the annual budget

for that year, the justices have no power by a resolution, adopted after the appropriations were made, to increase the salary of a court attendant to take effect on the first day of the ensuing year, and hence a writ of mandamus will not lie to compel the comptroller of New York city to audit such an increase for which no appropriation had been made. (New York City Charter [L. 1901, ch. 466], §§ 226, 230, 1542, 1583.)

*Matter of Flaherty* v. *Craig*, 184 App. Div. 428, reversed.

(Argued February 27, 1919; decided March 18, 1919.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 11, 1918, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the comptroller of the city of New York to audit the payroll of the petitioner containing an increase in his salary as Supreme Court attendant.

The question presented is whether, under section 168 of the Judiciary Law, the justices in Kings county can raise an attendant's salary after it has been fixed by them for the ensuing year according to the methods detailed in the Greater New York charter for the raising and paying of county charges.

The facts, so far as material, are stated in the opinion.

*William P. Burr*, Corporation Counsel (*Terence Farley* of counsel), for appellant. The item for the increase in the relator's salary should have been included in the departmental estimate submitted by the justices to the board of estimate; it should have been allowed in the budget and included in the tax levy. (*State ex rel. Decker* v. *Stanfield*, 34 Okl. 524.) If the comptroller has no appropriation with which he may pay the increase in salary to the relator, mandamus will not issue to compel him to do so. (*People ex rel. Daly* v. *York*, 66 App. Div. 453; 171 N. Y. 627.)

*Meier Steinbrink* and *Hunter L. Delatour* for respondent. The justices had power to fix the relator's salary

at the time and in the amount stated and the comptroller has no power to review their action and no right to ignore their direction. (Cons. Laws, ch. 30, § 168; *People ex rel. Rea* v. *Prendergast,* 178 App. Div. 930; 221 N. Y. 582; *Pitt* v. *Bd. of Education,* 216 N. Y. 304; *People ex rel. O'Loughlin* v. *Prendergast,* 219 N. Y. 377; *Kid* v. *City of Buffalo,* 123 N. Y. 152.)

CRANE, J. Section 168 of the Judiciary Law (Cons. Laws, ch. 30) gives to the justices of the Supreme Court for the second judicial district, residing in Kings county, the power to appoint, and at pleasure remove, all clerks, attendants, messengers and court officers in the Supreme Court in said county and the right to fix their compensation except where such compensation is fixed by law.

In accordance with the provisions of the New York city charter the justices on July 13, 1917, submitted to the board of estimate and apportionment an estimate of the amount of expenditure required for 1918 including a statement of the salaries of the clerks, attendants and other employees of the Supreme Court, Kings county. The relator's salary for the year 1918 was fixed therein at $1,800.

On the 13th of December, 1917, the justices residing in Kings county, by resolution, increased the salary of the relator, as court attendant, from $1,800 to $2,000 per annum to take effect on the first day of January, 1918.

The board of estimate and apportionment on January 15, 1918, by resolution, recommended that a letter be directed to the justices asking them to rearrange their salary schedules so as to keep within the budgetary allowance and not make necessary the issuance of special revenue bonds to meet this and other salary increases. To the letter thus sent, a reply was received which stated in substance that it was impossible to rearrange the salary schedule of the court for the year 1918 so as to keep within the budgetary allowance as now fixed,

and the justices, therefore, renewed their application for additional funds. No action having been taken, this proceeding was commenced on the ninth day of April, 1918, for a mandamus compelling the comptroller to audit and allow the increase in relator's salary from January 1, 1918.

That the Supreme Court justices, under the Judiciary Law, had the right to fix the relator's salary without the acquiescence or approval, and beyond the control of the board of estimate or the board of aldermen, is not disputed. If the amount of increase had been included in the estimate for the year 1918, the board of estimate would have been required to include it in the budget for that year and the board of aldermen to adopt it. (*People ex rel. O'Loughlin v. Prendergast*, 219 N. Y. 377.)

It is claimed, however, on behalf of the city that as this increase of $200 in the relator's salary was not included in the estimate and in the budget for the year 1918, and no appropriation made therefor, the comptroller cannot be compelled by mandamus to audit and allow the amount. On behalf of the relator, it is stated that the power to fix his salary also included the right to fix the time when an increase should take effect and that this was not controlled or regulated in any way or limited by the provisions of the New York city charter.

No doubt the Supreme Court, as has been intimated in the opinion below, has certain inherent rights which it could use if necessary. If no provision were made for a courtroom, attendants or equipment, no doubt the justices of the courts could procure these things by some appropriate measure, but the necessity has never arisen. The legislature has always provided a means whereby the courts could exercise their functions, and it is well recognized that within reasonable limitations the legislature may regulate these matters. There are various laws, commencing at an early day, providing for rooms, attendants, fuel, light and stationery for the transaction

of court business. (Laws of 1848, chapter 379.) As to Kings county, attendants, messengers and court officers were provided for by chapter 648 of the Laws of 1870; . chapter 165 of the Laws of 1873; chapter 448, section 95, of the Laws of 1876; chapter 946, section 95, of the Laws of 1895, and by section 168 of the Judiciary Law (Chapter 35 of the Laws of 1909, as amended by chapter 182 of the Laws of 1911, and chapter 826 of the Laws of 1913). In fact, the attendants and clerks have always been appointed in accordance with some statute relating to the matter, and the relator in this instance is dependent for his position upon the power conferred by the Judiciary Law.

The salaries of all these various appointees have generally been made county charges and direct authority for this is found in the Judiciary Law (§§ 351, 352, 354) as applicable to the counties of Queens and Richmond and for the County Court of Kings county, all within the city of New York. The corporation counsel says that no such provision is made regarding the salaries of court clerks and attendants for the Supreme Court, Kings county, and that, therefore, these amounts are chargeable to the state and not to the city. All prior legislation has made these salaries county charges and they have been recognized as such ever since the incorporation of the greater city. Considering the long-established practice it will be assumed that the legislature intended by section 168 of the Judiciary Law to charge the salaries, as fixed by the justices of Kings county under that provision, to the county, the same as the salaries in Queens and Richmond were charged respectively to those counties and as previous acts had provided. Any radical change would have been distinctly stated.

But the question still remains whether or not the provision of the charter, prescribing the method by which the salaries as county charges shall be raised and paid, applies to these clerks and attendants of the Supreme Court. We think that such is the intention of the

legislature.   There is no question but that the legislature
in giving the power to appoint the attendants, fix their
salaries and make the same a county charge, could also
prescribe the method of payment.   This has been done
with reference to the attendant of the county of Rich-
mond.   His salary, fixed by the justices, residing in
Richmond county, is subject to the approval of the board
of estimate and apportionment of the city of New York
in its discretion and shall be a county charge.   The
legislature could have specifically directed that these
salaries, which were county charges, should be treated
like any other county or city charge and follow the
procedure enacted in the charter of the city of New
York.   This is what we think must be the law when the
charter is read in connection with the Judiciary Law.
Section 168 of the Judiciary Law, giving the justices the
right to appoint an attendant and fix his salary, makes
that salary by implication a county charge to be raised
and paid in accordance with the provisions of the city
charter.   The salaries of the clerks and attendants of the
Supreme Court in Kings county, the County Court and
the Surrogate's Court are all included in the city budget
and paid out of the funds raised by taxation.   How does
the city proceed to determine the amount necessary to be
raised to meet these various items?   Section 226 of the
charter (L. 1901, ch. 466, amd. L. 1917, ch. 258) provides
as follows: Referring to the board of estimate and appor-
tionment, it says:

" The said board shall annually, between the first day
of October and the first day of November meet, and make
a budget of the amounts estimated to be required to pay
the expenses of conducting the public business of the city
of New York, as constituted by this act and of the
counties of New York, Kings, Bronx, Queens and Rich-
mond for the then next ensuing year. * * * In
order to enable said board to make such budget, the

presidents of the several boroughs, the heads of departments, bureaus, offices, boards and commissions shall, not later than August 1st, send to the Board of Estimate and Apportionment an estimate in writing, herein called a departmental estimate, of the amount of expenditure, specifying in detail the objects thereof, required in their respective departments, bureaus, offices, boards and commissions, including a statement of each of the salaries of their officers, clerks, employees and subordinates."

Section 230 requires the board of estimate *annually* to include in its final estimate " Such sum as may be necessary to pay the salaries of county officers within the counties of New York, Kings, Queens and Richmond, and likewise all other expenses within said counties and each of them which are county as distinguished from city charges and expenses."

On or before the 20th day of October the board shall prepare and file with its secretary its proposed budget for the ensuing year. The budget must be sent to the board of aldermen which may reduce the several items, fixed by the board of estimate and apportionment except such amounts as are fixed by law. Prior to December 25th in each year, the budget, as finally adopted, shall be certified to the mayor, and the several sums shall be and become appropriated to the several purposes therein named.

By section 1542 of the charter, it is provided that the expenses shall not exceed these appropriations. It reads:

" It shall be the duty of the heads of all departments and of all officers of said city, and of all boards and *officers charged with the duty of expending or incurring obligations payable out of the moneys raised by tax in said city, or any of the counties contained within its territorial limits,* so to regulate such expenditures for any purpose or object, that the same shall not in any one year exceed the amount appropriated by the board of estimate and apportionment for such purpose or object; and no charge, claim or liability shall exist or arise against said city, or

any of the counties contained within its territorial limits, for any sum in excess of the amount appropriated for the several purposes."

Section 1583 also provides for auditing by the department of finance and paying, out of the funds applicable thereto, all county charges, expenses and salaries of county officers.

While it is true that the justices of the Supreme Court, Kings county, are not a part of the city government and are not the head of any city department, yet within the meaning of section 1542, we think they are officers charged with the duty of incurring obligations payable out of the money raised by taxation in a county contained within the territorial limits of the city.

They have, in this very instance under section 168 of the Judiciary Law, attempted to create a county liability by fixing and increasing the relator's salary. The practical construction, which has been given to these charter provisions, has been to treat court clerks, and attendants, whose salaries were county charges, like other county employees so far as the method of their payment is concerned. The justices, like the heads of a department, have always made up from year to year an estimate in July in accordance with the provisions of section 226 above referred to. No reason exists, which we can appreciate, why these county salaries should not conform to a practice established by law for the raising of funds for all county charges of like nature and which is certainly reasonable and an avoidance of confusion. The money to meet all these fixed charges has to be raised by the city from year to year, and reason dictates that as far as possible there should be uniformity in the manner of payment.

We conclude, therefore, that the estimate made up in July of 1917, in the absence of some special legislation to the contrary, governed the salaries of court clerks and attendants for the year 1918, so that the comptroller

cannot be compelled by mandamus to audit an increase in salary not included in the budget and for which no appropriation has been made.

The orders appealed from must be reversed and the application dismissed, with costs in all courts.

HISCOCK, Ch. J., CHASE, COLLIN, CUDDEBACK, HOGAN and McLAUGHLIN, JJ., concur.

Orders reversed, etc.