[Civil No. 2807.  Filed July 10, 1929.]

[279 Pac. 257.]

THE BANK OF LOWELL, a Corporation, Appellant, v. W. M. COX, as Treasurer of Cochise County, Arizona, Appellee.

See Bridges, 9 **C. J.**, sec. 54, p. 461, n. 31, 32.

Constitutional Law, 12 **C. J.**, sec. 387, p. 883, n. 98.

Counties, 15 **C. J.**, sec. 250, p. 555, n. 90; sec. 277, p. 573, n. 20; sec. 313, p. 605, n. 41; sec. 348, p. 635, n. 79.

Evidence, 22 **C. J.**, sec. 70, p. 140, n. 54, p. 141, n. 62.

Mandamus, 38 **C. J.**, sec. 394, p. 760, n. 18; sec. 591, p. 876, n. 79.

Officers, 46 **C. J.**, sec. 287, p. 1032, n. 82.

Statutes, 36 **Cyc.**, p. 1110, n. 54, p. 1151, n. 49.

Mr. A. R. Lynch and Mr. W. G. Gilmore, for Appellant.

Mr. James T. Gentry, County Attorney, and Messrs. Sutter & Roche, for Appellee.

LOCKWOOD, C. J.—In September, 1926, a flood destroyed several bridges in Cochise county. The

county budget adopted according to law for that fiscal year some time previously had made no provision for funds which could be used in rebuilding the bridges in question, and the board of supervisors therefore made application to the tax commission, under the provisions of paragraph 4842–A, Revised Statutes of Arizona (Civil Code) 1913, as added by Laws of 1921, chapter 52, section 3, for an emergency authorization to incur liabilities for that purpose. This application reads as follows:

"State Tax Commission, Phoenix, Arizona—
"Gentlemen: I am directed by the Board of Supervisors to file with you an application for an Emergency appropriation to repair and reconstruct bridges damaged by the September floods as follows:

| | |
|---|---:|
| Naco Wash | $ 5,500 00 |
| Greenbush Draw | 5,300 00 |
| Hereford | 13,500 00 |
| Benson-Willcox | 63,900 00 |
| Bisbee Wash | 5,500 00 |
| Palominas | 3,500 00 |
| Earth work all bridges | 15,000 00 |
| "Total | $112,200 00 |

"Yours very truly,
"W. E. CLARK,
"Clerk Board of Supervisors."

After the proper statutory notice and hearing, the tax commission made the following order:

"Under the provisions of Chapter 52, Session Laws of the Fifth Legislature of the State of Arizona, 1921, an emergency is hereby declared to exist in the funds heretofore provided in the 1926 budget for the maintenance, repairing and operation of the road system of Cochise County in the amount of $112,200.00 and you are hereby authorized to incur liabilities in the amount of $112,200.00 for the purpose of repairing and restoring the following highway bridges:

| | |
|---|---:|
| Naco Wash | $ 5,500 00 |
| Greenbush Wash | 5,300 00 |
| Hereford Wash | 13,500 00 |

| | | |
|---|---|---|
| Benson-Willcox | 63,900 | 00 |
| Bisbee Wash | 5,500 | 00 |
| Palominas Wash | 3,500 | 00 |
| Earth work all bridges | 15,000 | 00 |

"Total ........................... $112,200 00

"This order is based upon information presented and filed with the State Tax Commission at a hearing held at the Supervisors' office, Tombstone, Arizona, Friday, November 12th, 1926."

March 21st, 1927, the supervisors entered into a contract with the Ware Company for the reconstruction of the Hereford Bridge for an agreed price of $16,212. In August, 1927, the supervisors adopted a county budget for the fiscal year beginning July 1st, 1927, and ending June 30th, 1928, and included therein an item in the sum of $100,000, unsegregated, which was meant to cover all the matters set forth in the order of the tax commission above, and a tax levy was made in accordance therewith. December 5th, 1927, the supervisors drew and issued to Ware Company a county warrant in the amount of $3,839.20, being as stated on the warrant, "in payment of claim No. W—116 for Hereford Bridge Contract." This warrant was assigned to the bank of Lowell, a corporation, hereinafter called plaintiff, and by it presented to W. M. Cox, the treasurer of Cochise county, hereinafter called defendant, for payment or registration. The defendant refused to register the warrant, assigning the following reason: "The $100,000 emergency road fund is so nearly taken up that there is not sufficient amount left to care for this warrant." Thereupon plaintiff brought this action of *mandamus* to compel defendant to register the full amount of the warrant as being a lawful charge against Cochise county by virtue of the order of the tax commission above and the proceedings of the supervisors thereunder.

The complaint set up in substance the foregoing facts and defendant demurred thereto, which demurrer was sustained, and, plaintiff declining to plead further, judgment was rendered as follows:

"It is hereby Ordered, Adjudged and Decreed that plaintiff's complaint and petition for writ of *mandamus* be dismissed and denied; that the said warrant No. 530, payable to the order of Ware & Company for the sum of $3,839.20, mentioned and described in plaintiff's complaint and petition for writ of *mandamus,* is void and of no effect and is not a legal claim against the said County of Cochise, State of Arizona; and that said warrant is not entitled to be registered by the above named defendant as Treasurer of Cochise County, Arizona."

From this judgment plaintiff has appealed.

In view of the extreme importance to the state of the real question involved, being the meaning and effect of the so-called "Budget Law," we shall first analyze the law and then consider its application to the case at bar.

Up to statehood the power of the various boards of supervisors to levy county taxes was governed by paragraphs 3831 and 3832, Revised Statutes of Arizona (Civil Code) 1901. There was no limit on the expenditure of these funds, except of course that the purpose must be one authorized by some law; nor was there any method provided whereby the taxpayers of the county were given an opportunity of knowing what expenditures were contemplated so that they might protest if they so wished. Further, the supervisors might incur liabilities on behalf of the county not provided for in the current tax levy and utterly unknown in advance to the taxpayers, which would place a heavy burden on the latter, in some cases extending over a period of many years. As a natural and perhaps inevitable result, most of the counties had outstanding at all times a floating

indebtedness of a character and amount unascertained and almost unascertainable, except by an expensive and complete audit of the county records, and necessitating at intervals either a bond issue or heavy and sudden increase of taxation to clear up the indebtedness. This situation was not unique to Arizona, and several of the states had made attempts to meet it by providing for some form of a budget. These laws varied in form, but the fundamental purpose was the same—to put county affairs on a cash basis and then to maintain them so by prohibiting the incurring of any indebtedness in any fiscal year, unless funds had been first provided to meet it. *McGowan* v. *Ford,* 107 Cal. 177, 40 Pac. 231; *Board of Commrs.* v. *Hampson,* 24 Colo. 127, 48 Pac. 1101; *State* v. *Stanfield,* 34 Okl. 524, 126 Pac. 239; *Pardee* v. *Salt Lake County,* 39 Utah 482, Ann. Cas. 1913E 200, 36 L. R. A. (N. S.) 377, 118 Pac. 122.

Impelled by the existence of the same evils and guided by the same purpose, our legislature in 1913 adopted what became chapter 3 of title 49, Revised Statutes of Arizona (Civil Code) 1913. This chapter contained two provisions new to our law: (a) That the supervisors prior to levying the annual taxes must estimate the probable expenditures for the ensuing year and submit these estimates to the taxpayers at a regularly noticed meeting, and (b) that the tax levy (exclusive of school taxes) for any year could not exceed the previous year's levy more than ten per cent. In 1917 taxes for bond purposes were put on the same basis as school taxes. The law, however, was not fully adequate to meet the evil, in that while the tax levy could not exceed the prescribed ten per cent increase, there was no limit on the incurring of liabilities, and floating indebtedness continued to accumulate, the supervisors of the different counties considering themselves not bound to hold the indebtedness incurred within the tax levied. In 1921

(Laws 1921, chap. 52) therefore, the legislature amended paragraphs 4840 and 4842, Revised Statutes of Arizona 1913, and added a new paragraph, 4842–A, so that they read as follows, so far as is material to this case:

"4840. It shall be the duty of the board of supervisors of each county . . . not less than thirty (30) days prior to the date on which the regular annual tax levy is made, to prepare a statement covering the items and details of purposes of expenditures made for the fiscal year last past . . . and to connect therewith an estimate of the different amounts which may be required to meet the public expense for the ensuing year, therein fixing amounts proposed for all subjects which are recurring items of expense, with such an amount for contingency or emergency expenses as may occur, but which cannot be anticipated in advance. The said estimate shall contain a statement of the amount of money required for each item of expenditure necessary for county . . . purposes, together with the amounts necessary to pay the interest and principal of the county . . . bonds, as provided by law, and the items and amounts of every special levy by law provided to be assessed, levied and collected. . . . Such estimates shall be fully itemized . . . and shall contain a full and complete disclosure and statement of the contemplated expenditures for the ensuing year, showing the amount proposed to be expended from each separate fund, and the total amount of proposed public expense. . . . The total of amounts in such estimates proposed for expenditure shall not exceed by ten (10) per centum the aggregate of actual expenditures for the previous year exclusive of expenditures for school, bond, special assessment and district levy purposes. . . .

"4842. It shall be the duty of boards of supervisors . . . to meet one week previous to the day on which they levy taxes . . . when and where any taxpayers who may appear shall be heard in favor of or against any proposed expenditure or proposed tax levies. When such hearings shall have been concluded, such board of supervisors . . . shall adopt

the estimate as finally determined upon . . . and no expenditure shall be made for a purpose not included in such budget, and no debt, obligation, or liability shall be incurred or created in any year in excess of the amounts specified therein as an amount proposed and finally adopted for each purpose therein named; nor beyond the amounts therein proposed and adopted to be raised by taxation, except when the other sources of revenue have been and are first received by the county . . . as a means of liquidating such extra obligations and liabilities.

"4842–A. (a) In the event of epidemics or disease, or acts of God, which result in damage or disaster to the works, roads, buildings, or property of a county . . . and the results of which have not been anticipated in the budget . . . and restricted to cases where no other funds have been provided . . . the boards of supervisors . . . may present to the State Tax Commission, in writing, the facts . . . which may require the incurring of a liability during any fiscal year, and therein specify an amount which is deemed necessary for the purposes of that emergency, and the State Tax Commission shall cause a notice of such application to be published . . . of the time and place where such application will be heard and determined. . . . At such time and place any interested taxpayer may appear and present reasons, either in favor of or opposing the application. If it appears to the Tax Commission that the emergency does exist, it may make an order . . . fixing therein an amount of liability which may be incurred, but not to be exceeded . . . The officials of the county . . . may thereafter incur liabilities and warrants may be drawn and issued therefor to an aggregate not exceeding the amount so allowed by the Tax Commission, and the tax levy of the next fiscal year for that county . . . shall include a separate item to cover the aggregate of all such warrants, which have not been paid and cannot be paid with balances remaining to the credit of the general funds after other expenditures and liabilities thereon have been liquidated. . . . (c) . . . it being expressly declared the intention that no deficits in the county funds mentioned shall be carried

from one fiscal year to another except under the terms and provisions of this Act.''

On examining paragraph 4842, *supra,* it will be seen that if this statute be followed by supervisors there is no possibility of any debt being incurred during any fiscal year which cannot be paid during the year, except as provided in paragraph 4842–A, *supra,* and the long-existing evils which the so-called ''budget system'' was intended to remedy are thus effectually destroyed.

What, then, are the powers and duties of supervisors under the Budget Law? They are admittedly to be found in the paragraphs quoted above, but just what do they mean?

There are two rules of statutory construction peculiarly applicable to the situation. If statutes be ambiguous in their language, they must be construed in view of the purposes they are intended to accomplish and the evils they are to remedy. *Smith* v. *Townsend,* 148 U. S. 490, 37 L. Ed. 533, 13 Sup. Ct. Rep. 634; *United States* v. *Eaton,* 169 U. S. 331, 42 L. Ed. 767, 18 Sup. Ct. Rep. 374.

And they must, especially if adopted at the same time, be construed as a whole and effect given, if possible, to every part thereof. 25 R. C. L. 1004, and note 15. With these two canons before us, let us examine the statute.

The supervisors must first prepare an estimate of all expenses of every nature which must be met by the county during the ensuing year, and if any proposed expenditure is not shown in the budget, no liability for that purpose can even be incurred, for ''no debt, obligation, or liability shall be incurred or created in any year in excess of the amounts specified therein as an amount proposed and finally adopted for each purpose therein named''; the only exceptions being those authorized by paragraph 4842–A, *supra,* and

obligations to be met with funds other than current taxes and already on hand. But while certain obligations may be incurred under paragraph 4842–A, *supra,* without being first included in the current year's budget, even these, before they can be paid from the next year's taxes, must be budgeted, for the budget must contain "the items and amounts of every special levy by law provided to be assessed, levied and collected," and since when liabilities are incurred and warrants drawn under an order of the tax commission the "tax levy of the next fiscal year . . . shall include a separate item to cover the aggregate of all such warrants," the money raised to pay those liabilities is clearly a "special levy by law provided." *Arizona Eastern R. Co.* v. *Graham County,* 19 Ariz. 320, 170 Pac. 792.

We hold, therefore, that boards of supervisors are without jurisdiction to authorize the actual expenditure of any county money for any purpose whatever, unless the expenditure be provided for in the budget of the current year, or the money be already on hand from some source other than the taxes of such year. Paragraph 4842, *supra; Batterton* v. *Pima County,* 34 Ariz. 307, 271 Pac. 720.

Nor have they jurisdiction to incur any indebtedness whatsoever except (a) as shown in the budget, (b) as authorized by the tax commission as an emergency, to be incurred only during the fiscal year the order of the commission is made, and (c) as covered by funds already on hand and produced by other means than the current year's taxes. *Batterton* v. *Pima County, supra; Le Febvre* v. *Callaghan,* 33 Ariz. 197, 263 Pac. 589.

Let us then apply the foregoing principles to the present case. First, what indebtedness was the board authorized to incur? The application was for "an emergency appropriation to repair and reconstruct bridges damaged by the September floods as fol-

lows," specifying seven distinct items aggregating $112,200, one being, "Hereford........$13,500.00." The order of the tax commission was "you are hereby authorized to incur liabilities in the amount of $112,200.00 for the purpose of repairing and restoring the following highway bridges," specifying the seven items as asked for. Plaintiff urges this is a blanket appropriation of $112,200, to be divided by the board as it saw proper among the various items. We cannot agree with this contention. In the first place, the order of the tax commission was not an appropriation, but merely an authority for the board to incur liabilities not exceeding the amount fixed, for which an appropriation was to be made in the next tax levy, if it could not be paid by unexpended balances in the general funds of the county. Further, the application of the board was the basis of the hearing before the tax commission. The purpose of such hearing was to permit interested taxpayers to appear and either favor or oppose it. Those taxpayers were entitled to rely on the notice and application as showing just how and where the money was to be expended, and to base their approval or disapproval thereon. They might well have approved the authorization on the basis of the division shown, while opposing it on any other. To hold that the money specifically authorized for one bridge might be used on another would be contrary to all principles governing the expenditure of public money. *Jenkins v. Williams,* 14 Cal. App. 89, 111 Pac. 116; 15 C. J. 584.

Under the order of the tax commission, the supervisors were therefore confined to the incurring of an indebtedness not in excess of $13,500 for the reconstruction of the Hereford Bridge, not including earth work connected within. The contract, therefore, was *ultra vires* and void, and the county is liable only on an implied contract to the extent of $13,500, unless

it can be sustained by some other authority than the order of the tax commission. *Henry A. Keith & Co.* v. *City of Du Quoin,* 89 Ill. App. 36; *Flaherty* v. *Craig,* 226 N. Y. 76, 123 N. E. 157; *Lines* v. *Village of Otego,* (Sup.) 91 N. Y. Supp. 785.

It is true that supervisors have the general power to construct and repair bridges within their counties, but this power is limited by the Budget Law, so that any money to be expended or indebtedness to be incurred for such a purpose must be included within the budget, if it is to be paid from any source except funds already on hand. The complaint, however, does not base on this general power, so we need not consider this point further.

On July 1st, 1927, the authority of the board to incur indebtedness by virtue of the order had terminated, and the various liabilities of the county thereunder had become fixed. They might be less, but could not be greater, than the separate amounts set forth in the order. None of such indebtedness could have been legally paid up to that time, except with balances remaining to the credit of the general funds after all other liabilities against such funds had been liquidated, though warrants might have been drawn and issued therefor. What was the next duty of the supervisors? The statute sets it out clearly. They must compute the legal liability remaining unpaid, an easy matter, since the total liability had been fixed by that time, and the warrants, if any, paid from balances must appear in the county records, and then include an item in the next budget and tax levy to cover the amount of indebtedness still outstanding. It is urged that the items should include only the warrants actually issued and delivered to the debtors at the time the levy was made. In view of the fact the total possible liability was fixed by that time, of the provision of the statute limiting the levy to the "next fiscal year" after the liability was incurred,

and of the declaration in the law that no deficits in the county funds should be carried over from one fiscal year to another, we think it was the intent of the law that the special levy should include the total indebtedness then existing under the order, notwithstanding it was not yet due and that warrants therefor had not been delivered to the creditor.

The complaint sets up that the board did include in its budget for the fiscal year 1927–28 an item of $100,000 ''for all purposes set forth in said emergency order.'' It is silent as to why the item was $12,200 less than the total authorized by the order. There are at least two possible legal reasons for such difference. Either some of the bridges to be built cost less than the amount authorized, or else there were some unexpended balances which had at the time of making the budget been used in taking up some of the warrants already issued. In the absence of any averment to the contrary, we must assume that public officers do their duty and that one of the reasons suggested or some other legal one accounts for the omission. *Hunt* v. *Campbell,* 19 Ariz. 254, 169 Pac. 596; *Chenoweth* v. *Budge,* 16 Ariz. 422, 145 Pac. 406; 22 C. J. 130.

If this were not the case, and if the budget item failed to include the amount authorized under the order of the tax commission to be expended on the Hereford Bridge, and for which a legal liability of Cochise county existed, the remedy of the creditor was not to compel the defendant to pay a warrant not covered by the budget, but to compel the supervisors to budget the item properly.

We must assume, therefore, that the $100,000 levy above set forth included all the legal indebtedness still outstanding on each item of the order of the tax commission, and particularly that on the Hereford Bridge, which might be less than, but which could not

exceed $13,500. Again following the legal presumption that officers do their duty, we must assume that defendant in paying warrants from such levy limited the payments for each particular bridge to the authorized liability and levy therefor. *Jenkins* v. *Williams, supra.* When, therefore, he refused to register the warrant on the ground "that there is not sufficient amount left to. care for this warrant," he must have meant there was not sufficient left of the amount levied for the purpose of taking care of the authorized and existing liability for the Hereford Bridge. If this was the fact, it was his duty to refuse to pay the warrant; if it was not, the complaint should have shown that the money was on hand, or that it had been, but was illegally diverted to other purposes.

It is contended, however, that even though there was not enough on hand to pay the warrant, it was nevertheless entitled to registration for payment from the first funds available. The complaint shows the total amount expended on the reconstruction of the Hereford Bridge was $21,062.63, and, as we have shown, the limit of the legal liability was $13,500. There is no allegation that the full legal amount which was due or to become due had not already been paid. Ordinarily, of course, payment is a defense and need not be negatived in the complaint; but when, as in this case, facts appear on the face of the complaint which, together with the legal presumptions arising therefrom, imply payment, we think such implication should be. negatived by the plaintiff, if the complaint is to state a cause of action. Since from the facts set forth in the complaint it could not be said Cochise county was legally indebted to plaintiff in the amount of the warrant, the court rightly sustained the demurrer.

What we have just said disposes of most of the assignments of error. There are a number of others which we need not consider, except one that even

though the contract was originally *ultra vires,* it was ratified by performance and acceptance by the board. All parties dealing with public officers are conclusively bound to know the limits of the powers of the latter, and an *ultra vires* contract is void as to the part in excess of jurisdiction, even though performance by the other party may make it good as to that part within the powers conferred. *McGillivray* v. *Joint School Dist. No. 1,* 112 Wis. 354, 88 Am. St. Rep. 969, 58 L. R. A. 100, 88 N. W. 310. Nor can the illegal part be ratified. *Marsh* v. *Fulton County,* 10 Wall. 676, 19 L. Ed. 1040; *Norton* v. *Shelby County,* 118 U. S. 425, 30 L. Ed. 178, 6 Sup. Ct. Rep. 1121.

It is true the judgment works a great hardship on a party which has in good faith purchased a county warrant regular on its face. The legislature, however, in its efforts to put an end to what it considered a great public evil, and acting within its undoubted constitutional powers, has definitely laid down a policy which renders indebtedness incurred under circumstances such as those appearing on the face of the complaint, and for which the warrant in question was presumably issued, *ultra vires* and void. The appeal for redress, if any be due, must be made to the legislature and not to the courts. We can but enforce the law as it is written, and all those who deal with any public officers who come within the purview of the Budget Law must at their peril take knowledge of the limitations of that law.

The judgment of the superior court of Cochise county is affirmed.

McALISTER and ROSS, JJ., concur.